UNITED STATES of America, Plaintiff–Appellee,

v.

Joseph GASTIABURO, a/k/a Joe Gastiaburo, a/k/a Joseph Gastiburo, a/k/a Joseph Menendez, a/k/a Joseph Gastibury, a/k/a Robert Julio Gastiaburo, a/k/a Joseph Mendez, a/k/a Joseph Rodriguez, Defendant–Appellant.

No. 92–5513.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 28, 1993.

Decided Feb. 8, 1994.

**ARGUED:** Fred Warren Bennett, Baltimore, Maryland, for Appellant. Russel N. Jacobson, Special Assistant United States Attorney, Alexandria, Virginia, for Appellee.

**ON BRIEF:** Kenneth E. Melson, United States Attorney, Marcus J. Davis, Assistant United States Attorney, Alexandria, Virginia, for Appellee.

Before MURNAGHAN and NIEMEYER, Circuit Judges, and YOUNG, Senior U.S. District Judge for the District of Maryland, sitting by designation.

## OPINION

MURNAGHAN, Circuit Judge:

After pulling over defendant-appellant, Joseph Gastiaburo, for a routine traffic stop, a Virginia State Trooper conducted a warrantless consent search of Gastiaburo's car. The search produced $10,000 cash, drug paraphernalia, and several grams of cocaine base ("crack cocaine"). The state police arrested Gastiaburo and impounded his car.

Five weeks later, after receiving a tip from an acquaintance of Gastiaburo, the police conducted a warrantless search of a hidden compartment in the car's dashboard and seized a loaded semiautomatic pistol and a much larger quantity of crack cocaine. The district court denied Gastiaburo's motion to suppress the evidence seized during the latter search.

At trial under an indictment charging (a) possession of drugs with intent to distribute, (b) carrying a firearm during and in relation to a drug trafficking crime, and (c) possession of a firearm by a convicted felon, the government put a law enforcement officer on the stand as an expert on drug trafficking practices and techniques. Over and beyond direct and cross-examination, the district judge asked the government's expert several questions; later, he asked the defense's sole witness several questions, as well. The jury convicted Gastiaburo on all counts, and the district judge sentenced him to 322 months imprisonment. He has appealed.

### I. The Facts

At midday on October 8, 1991, Joseph Gastiaburo and a passenger, Dina Viola, were heading southbound on Interstate 95. Virginia State Police Trooper Mark Cosslett pulled Gastiaburo over for reckless driving. Adhering to state police procedures for a routine traffic stop, Cosslett asked Gastiaburo for his license and registration and also asked if he was transporting any drugs or weapons. Gastiaburo replied that he was not, and asked Cosslett whether he would like to take a look in the vehicle. Cosslett replied, "You don't mind if I take a look through your vehicle?" Gastiaburo answered, "No, go ahead." Cosslett reiterated his request and explicitly confirmed that Gastiaburo had no objections to a search of both the vehicle and any containers therein.

Following those repeated consents to a search, Cosslett placed Gastiaburo in the police cruiser, wrote out a traffic citation, and waited for a backup officer. After the backup arrived, Gastiaburo was again asked for permission to search the vehicle, including any containers, and he again consented. With Gastiaburo sitting on the interstate guardrail adjacent to the car, Cosslett commenced his search. The search produced, among other things, a set of hand scales, rolling papers, razor blades, a knife with a retractable blade, a large number of small plastic baggies, an address book with various names and financial notations, a paging device or "beeper," $10,000 in cash (folded into $100 increments), a box of .25 caliber ammunition, and a black leather zippered pouch containing twenty-one small zip-locked plastic baggies, each containing about one-fifth of a gram of a rock-like substance that was subsequently determined to be crack cocaine.

The backup officer arrested Gastiaburo and drove him to a nearby detention center. His car was seized for forfeiture by the Commonwealth of Virginia and removed to an impoundment lot at the regional State Police headquarters, where it was secured by parking state vehicles around it. The next morning an inventory search of the impounded car produced no additional contraband.

On November 15, 1991, Cosslett and Viola, Gastiaburo's passenger at the time of arrest,

met at the Prince William County Courthouse. Viola inquired whether he had found the gun. When Cosslett said that he had not, Viola told him that there was a hidden compartment located behind the radio in the console of Gastiaburo's car, and that the compartment contained drugs, money, and a handgun.

Cosslett promptly went to the impound lot and, without obtaining a warrant, searched for and located the hidden compartment. He found and seized a loaded, .25 caliber semiautomatic pistol and, wrapped in aluminum foil and then in brown paper lunch bags, a lump of rock-like substance that was subsequently determined to be a 24-gram "rock" of crack cocaine.

A grand jury of the United States District Court for the Eastern District of Virginia returned the above-mentioned three-count indictment against Gastiaburo. On April 3, 1992, a suppression hearing took place. After listening to conflicting testimony from Gastiaburo and Cosslett, the district judge resolved the credibility conflicts in Cosslett's favor and denied all of Gastiaburo's motions, including a motion to suppress the gun and the crack cocaine that Cosslett had seized during his warrantless search of the impounded car on November 15, 1991.

On April 22, 1992, Gastiaburo was tried before a jury in Judge Ellis's courtroom. The government called Cosslett, who gave testimony substantially similar to his earlier testimony at the suppression hearing. The government also called Sergeant Floyd Johnston of the U.S. Park Police as an expert in the field of drug trafficking practices and techniques. Among other things, Johnston examined the various government exhibits that had been seized from Gastiaburo's car and testified that they were generally consistent with crack cocaine distribution, rather than with mere personal use of the drug. In response to questions from the bench, Johnston also testified about the quantities of crack cocaine consumed by typical addicts.

Gastiaburo called only one witness, Charles J. Pucci, his brother-in-law. Pucci testified that Gastiaburo had visited him in New York City shortly before the arrest, and that he had given Gastiaburo $10,000 in loose cash to pay a debt to a family member in Florida. The court asked Pucci several questions about the cash, and also inquired about Pucci's occupation. Judge Ellis then asked whether Pucci had ever been convicted of a felony. Pucci responded, "I have not."

The jury returned guilty verdicts on all three counts. The district court imposed a sentence of 322 months imprisonment plus five years of supervised release, $10,000 forfeiture, and $150 in special assessments. Gastiaburo's appeal followed.

## II. The Gun and Cocaine Seized on November 15, 1991

■ Gastiaburo has contended that the gun and the 24-gram rock of crack cocaine that the police seized from his car on November 15, 1991 should have been suppressed because they were obtained without a warrant, in violation of his Fourth Amendment rights. In response the government has argued that the district court's denial of Gastiaburo's motion to suppress should be affirmed on any of four grounds: (1) the evidence was seized during a valid consent search; (2) the evidence was seized during a valid inventory search; (3) the police had probable cause to believe the search would uncover contraband (i.e., the so-called "automobile exception" to the warrant requirement); or (4) the evidence was seized during a valid search of a vehicle subject to forfeiture. The third argument, based on the "automobile exception" to the warrant requirement, is clearly correct. Because we review such a mixed question of law and fact de novo, see, e.g., United States v. Moore, 817 F.2d 1105, 1106–08 (4th Cir.), cert. denied, 484 U.S. 965, 108 S.Ct. 456, 98 L.Ed.2d 396 (1987), the district court's decision not to suppress the evidence seized on November 15, 1991 should be affirmed.

■ The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. Searches conducted without a warrant issued by a judge or magistrate upon probable cause "are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and

well-delineated exceptions." *California v. Acevedo*, 500 U.S. 565, ——, ——, 111 S.Ct. 1982, 1991, 114 L.Ed.2d 619 (1991) (citations and internal quotation marks omitted); *see also United States v. Turner*, 933 F.2d 240, 244 (4th Cir.1991). At least since 1925, when the Supreme Court handed down its decision in *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), the federal judiciary has recognized an "automobile exception" to the warrant requirement: it may be reasonable and therefore constitutional to search a movable vehicle without a warrant, even though it would be unreasonable and unconstitutional to conduct a similar search of a home, store, or other fixed piece of property. *See id.* at 153, 158–59, 45 S.Ct. at 285, 287.

■ The Supreme Court delivered its most recent exposition on the "automobile exception" in *California v. Acevedo, supra.* The *Acevedo* Court held that "[t]he police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." 111 S.Ct. at 1991. "[T]he scope of a warrantless search of an automobile is 'no narrower—and no broader—than the scope of a search authorized by a warrant supported by probable cause.'" *United States v. $29,-000—U.S. Currency*, 745 F.2d 853, 855 (4th Cir.1984) (quoting *United States v. Ross*, 456 U.S. 798, 823, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572 (1982)). With or without warrant, the scope of the search of an automobile is defined by the object of the search and the places in which there is probable cause to believe that it may be found. For example, probable cause to believe that a container placed in the trunk of an automobile contains contraband does not justify a search of the entire car. *See Acevedo*, 500 U.S. at ——, 111 S.Ct. at 1991 (citing *Ross*, 456 U.S. at 824, 102 S.Ct. at 2172).

In the present case, as of November 15, 1991, the police had probable cause to believe that one particular area within Gastiaburo's car contained as-yet undiscovered contraband. On that date, Dina Viola, Gastiaburo's passenger at the time of his arrest, met Cosslett at the Prince William County Courthouse and told him that there was a hidden compartment behind the radio in the console of Gastiaburo's car and that the compartment contained additional drugs and money, as well as a handgun. Those facts are uncontroverted, and they would have more than sufficed to justify the issuance of a warrant by a magistrate. Therefore, they also sufficed to justify a warrantless search of the area behind the radio.

Furthermore, the facts in the record indicate no overreaching by the police. As of November 15, 1991, the police apparently had probable cause to believe that contraband remained hidden only where Viola had told Cosslett to look. Appropriately, Cosslett confined his search to that area. And Gastiaburo does not claim that the search of November 15, 1991 covered a broader scope than that contained in the tip that gave Cosslett probable cause. Therefore, the November 15, 1991 search complied with the requirements of the Fourth Amendment.

■ Gastiaburo has made two responses to the government's "automobile exception" argument. First, he has contended that impoundment effectively transformed his car from a movable vehicle into a "fixed piece of property," thus making the automobile exception to the warrant requirement inapplicable. However, the justification to conduct a warrantless search under the automobile exception does not disappear merely because the car has been immobilized and impounded. *See United States v. Johns*, 469 U.S. 478, 484, 105 S.Ct. 881, 885, 83 L.Ed.2d 890 (1985); *Florida v. Meyers*, 466 U.S. 380, 382, 104 S.Ct. 1852, 1853, 80 L.Ed.2d 381 (1984) (per curiam); *Michigan v. Thomas*, 458 U.S. 259, 261, 102 S.Ct. 3079–3080–81, 73 L.Ed.2d 750 (1982) (per curiam); *see also Turner*, 933 F.2d at 244; *$29,000—U.S. Currency*, 745 F.2d at 855. Under the Supreme Court's precedents, the fact that impoundment may have made it virtually impossible for anyone to drive the car away or to tamper with its contents is irrelevant to the constitutionality of a warrantless search under the circumstances of the present case. *See, e.g., Thomas*, 458 U.S. at 261, 102 S.Ct. at 3081.

■ Second, Gastiaburo has noted that thirty-eight days transpired between the sei-

zure of his car on October 8, 1991 and the warrantless search in question, and has argued that the delay violated the "temporal limit on the automobile exception" and that "it was a *per se* unreasonable delay." Gastiaburo's "delay" argument also lacks merit. Not a single published federal case speaks of a "temporal limit" to the automobile exception. The Supreme Court has repeatedly stated that a warrantless search of a car (1) need not occur contemporaneously with the car's lawful seizure and (2) need not be justified by the existence of exigent circumstances that might have made it impractical to secure a warrant prior to the search. *See Acevedo*, 500 U.S. at ——, 111 S.Ct. at 1986 (explaining that the police can search later whenever they could have searched earlier, had they so chosen) (describing the Court's reasoning in *Chambers v. Maroney*, 399 U.S. 42, 51–52, 90 S.Ct. 1975, 1981–82, 26 L.Ed.2d 419 (1970)); *Johns*, 469 U.S. at 484–85, 105 S.Ct. at 885–86; *Thomas*, 458 U.S. at 261–62, 102 S.Ct. at 3080–81. Therefore, the passage of time between the seizure and the search of Gastiaburo's car is legally irrelevant.

■ Moreover, Cosslett's actual "delay" here was minimal: he conducted the search on the very same day that he first had probable cause to believe contraband could be found behind the dashboard of Gastiaburo's car. Cosslett testified at the suppression hearing that, upon learning of the hidden compartment in Gastiaburo's dashboard, he proceeded "to the headquarters, obtained the keys from the evidence custodian, removed the vehicles [that were blocking in Gastiaburo's car], and checked the hidden compartment." Such an expeditious search cannot be deemed *"per se* unreasonable." Rather, it falls squarely within the specifically established and well-delineated "automobile exception" to the Fourth Amendment's warrant requirement.

### III. Expert Testimony

Gastiaburo next has contended that the district court erred in admitting expert testimony from Sergeant Johnston that included (1) an opinion as to Gastiaburo's intent, allegedly in violation of Rule 704(b) of the Federal Rules of Evidence; and (2) matters within the common understanding of the jurors, allegedly in violation of Rule 702.

■ *A. Johnston's testimony on "intent to distribute."* The prosecutor had asked Johnston: "Would you have an opinion based on your training and experience what that crack cocaine [that the police had seized from the hidden compartment in Gastiaburo's car and the twenty-one zip-locked plastic baggies, each containing a "hit" of crack cocaine], . . . were possessed for, taking all the elements into consideration?" Johnston replied: "Clearly, based on my opinion, my training and experience, it was certainly possessed with the intent to distribute." Gastiaburo's trial attorney did not object. On appeal, Gastiaburo has claimed that Johnston's answer provided expert opinion testimony on Gastiaburo's intent in a specific-intent crime, a violation of Federal Rule of Evidence 704(b).

Because Gastiaburo did not object at trial, we review the admission of Johnston's expert testimony for plain error. Rule 52(b) of the Federal Rules of Criminal Procedure provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Fed.R.Crim.P. 52(b). The Supreme Court recently interpreted Rule 52(b) to require not only the existence of an "error" (*i.e.,* a "[d]eviation from a legal rule" that the defendant has not waived), but also that the error be "plain" (*i.e.,* "clear" or, equivalently, "obvious" under the current applicable law). *United States v. Olano*, —— U.S. ——, ——, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993) (citations and internal quotation marks omitted).

Rule 704(b) of the Federal Rules of Evidence provides:

> No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

Fed.R.Evid. 704(b). Rule 704(b) was enacted in the wake of the attempted assassination of President Reagan and the murder of John Lennon, and was an attempt to constrain psychiatric testimony on behalf of defendants asserting the insanity defense. *See generally* Anne Lawson Braswell, Note, *Resurrection of the Ultimate Issue Rule: Federal Rule of Evidence 704(b) and the Insanity Defense*, 72 Cornell L.Rev. 620 (1987). The application of the same rule in an entirely different context—a law enforcement officer's expert opinion testimony on behalf of the government at the trial of an alleged drug dealer—is murky at best.

Was Johnston in fact "testifying with respect to the mental state or condition of a defendant in a criminal case"? Did he actually "state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element" of the crime of possession of cocaine with intent to distribute? The testimony lends itself to the interpretation that possession of the quantity of crack cocaine seized from Gastiaburo's car—with the individual "hits" packaged in twenty-one small zip-locked baggies, and the larger "rock" in foil and paper bags—was consistent with the distribution of cocaine, rather than with mere personal use of the drug.

In any event, Gastiaburo's failure to object at the trial made the relevant inquiry for us whether Judge Ellis committed a "plain error" under Rule 52(b). The error, if any, was not "plain" (or "clear" or "obvious"). *Cf. Olano,* —— U.S. at ——, 113 S.Ct. at 1777. Most appellate panels have refused to find error in the admission of expert testimony on intent to distribute controlled substances. *See, e.g., United States v. Valentine,* 984 F.2d 906, 910 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 93, 126 L.Ed.2d 60 (1993); *United States v. Chin,* 981 F.2d 1275, 1279 (D.C.Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2377, 124 L.Ed.2d 281 (1993); *United States v. Williams,* 980 F.2d 1463, 1465–66 (D.C.Cir.1992); *United States v. Wilson,* 964 F.2d 807, 810 (8th Cir.1992);

*United States v. Gomez–Norena,* 908 F.2d 497, 502 (9th Cir.), *cert. denied,* 498 U.S. 947, 111 S.Ct. 363, 112 L.Ed.2d 326 (1990); *United States v. Alvarez,* 837 F.2d 1024, 1030–31 (11th Cir.), *cert. denied,* 486 U.S. 1026, 108 S.Ct. 2003, 2004, 100 L.Ed.2d 234, 235 (1988).* One recent D.C. Circuit decision did find that the admission of expert testimony on the defendant's intent to distribute violated Rule 704(b), but went on to hold that the error was not "plain" under the settled law of the Supreme Court or the D.C. Circuit, as it stood at the time of the trial. *See United States v. Mitchell,* 996 F.2d 419, 421–23 (D.C.Cir.1993).

▪ *B. Johnston's other testimony.* Gastiaburo also has contended that the district court should have rejected various parts of Johnston's testimony as insufficiently helpful for the trier of fact under Federal Rule of Evidence 702. On direct examination, Johnston testified, over defense counsel's objection, that it is not uncommon for people transporting controlled substances to grant consent to law enforcement officers to search their possessions or their persons. He also testified about the attributes of persons involved in the distribution of drugs and the "tools of the trade"—*e.g.,* beepers, address books, the quantities of drugs possessed by dealers, and so on. During defense counsel's cross-examination, Judge Ellis interjected, asking Johnston about half-a-dozen questions. In response, Johnston testified about addicts' typical levels of crack consumption, typical patterns of addiction, and typical quantities of crack that a user will purchase and hold at any given moment. Although Gastiaburo did not object at trial to the colloquy between Judge Ellis and Johnston, he has complained on appeal that the judge's questions violated Rule 614 of the Federal Rules of Evidence, *see infra* Part IV, and that the Johnston's answers violated Rule 702.

Federal Rule of Evidence 702 provides: If scientific, technical, or other specialized knowledge · will assist the trier of fact to understand the evidence or to determine a

---

* The question presented here has only recently been discussed. At the time of Gastiaburo's trial, the cases cited here had not yet been decided and published, with the exceptions of *Gomez–Norena* and *Alvarez.*

fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise. The trial judge has broad discretion under Rule 702. *See Hamling v. United States,* 418 U.S. 87, 108, 94 S.Ct. 2887, 2903, 41 L.Ed.2d 590 (1974) ("[T]he District Court has wide discretion in its determination to admit and exclude evidence, and this is particularly true in the case of expert testimony.") (citations omitted); *cf. United States v. Ham,* 998 F.2d 1247, 1252 (4th Cir.1993).

As then-Judge Ruth Bader Ginsburg has explained: "In accord with the commodious standard of Federal Rule of Evidence 702, expert testimony on the *modus operandi* of criminals 'is commonly admitted,' particularly regarding the methods of drug dealers." *Chin,* 981 F.2d at 1279 (quoting *United States v. Dunn,* 846 F.2d 761, 763 (D.C.Cir. 1988)); *see also Mitchell,* 996 F.2d at 423 ("Federal courts often allow expert testimony on narcotics operations to familiarize jurors with the variety of methods by which drug dealers attempt to pursue and conceal their activities....") (citing *Dunn,* 846 F.2d at 763).

We have repeatedly upheld the admission of law enforcement officers' expert opinion testimony in drug trafficking cases. *See, e.g., United States v. Safari,* 849 F.2d 891, 895 (4th Cir.) (upholding the admission of expert testimony on the size of an average dose of heroin, because, "[w]hile not usurping the function of the jury, this testimony aided the jury during its deliberations, for most laymen are not familiar with the quantity, purity, and dosage units of heroin"), *cert. denied,* 488 U.S. 945, 109 S.Ct. 374, 102 L.Ed.2d 363 (1988); *United States v. Monu,* 782 F.2d 1209, 1210–11 (4th Cir.1986) (upholding the admission of two investigative agents' expert opinion testimony regarding the purity of heroin and heroin distributors' use of triple-beam balance scales). Similarly, in *United States v. Wilson,* 964 F.2d at 809–10, the Eighth Circuit upheld a conviction for possession with intent to distribute and affirmed the admission of a drug enforcement agent's testimony that, based upon his experience and training, 130 grams of methamphetamine

(the amount seized from the defendant) was more than generally possessed by mere users of the drug. The Eighth Circuit found no abuse of discretion in admitting the agent's testimony: "Such testimony aids the jury by putting the drug dealer in context with the drug world. It is a reasonable assumption that a jury is not well versed in the behavior and average consumption of drug users." *Id.* at 810 (citation omitted); *see also United States v. Foster,* 939 F.2d 445, 452 (7th Cir.1991) (noting that "jurors are not well versed in the behavior of drug dealers"). Here, too, the district court properly admitted Johnston's expert testimony.

### IV. The District Judge's Questioning of Witnesses

■ Gastiaburo has further contended that he was denied a fair trial because the district judge violated Rule 614 of the Federal Rules of Evidence by improperly questioning witnesses at trial. Gastiaburo has claimed that there was error in the judge's questioning of Charles Pucci, Gastiaburo's brother-in-law and the only witness whom Gastiaburo called at trial. At the end of the government's cross-examination of Pucci, the judge asked him whether he typically sent $10,000 payments in cash via his brother-in-law (Gastiaburo), where he got the cash, what his occupation was, and whether he had ever been convicted of a felony. Gastiaburo did not object to those questions at trial.

Gastiaburo's argument appears to come too late. The plain language of Rule 614(c) of the Federal Rules of Evidence requires objections to the trial judge's interrogation of witnesses "[to] be made at the time or at the next available opportunity when the jury is not present." Fed.R.Evid. 614(c). We, interpreting that rule, have held that "the failure of ... counsel to object to any of [the district judge's] questioning at trial precludes our review of this issue on appeal." *Stillman v. Norfolk & W. Ry. Co.,* 811 F.2d 834, 839 (4th Cir.1987).

■ *Stillman* recognized a "limited exception" to the general rule against appellate review " '[w]here a trial judge's comments were so prejudicial as to deny a party an opportunity for a fair and impartial trial.' "

*Id.* (quoting *Miley v. Delta Marine Drilling Co.,* 473 F.2d 856, 857–58 (5th Cir.), *cert. denied,* 414 U.S. 871, 94 S.Ct. 93, 38 L.Ed.2d 89 (1973)). In sketching the contours of that "limited exception," we cited a case in which the judge interrupted the witness to answer the counsel's question himself, referred to the question as one that "any five-year-old idiot" could answer, and then instructed counsel, "Don't waste my time and the jury's on that." *Id.* (internal quotation marks omitted). Even those inflammatory and insulting comments were deemed *not* "sufficiently biased or notorious" to permit appellate review absent any objection at trial. *Id.*

Clearly, none of the questions that Judge Ellis asked of Johnston (a topic dealt with above) even began to approach the level of "bias" or "notoriety" found in the above-cited example. The same can be said of Judge Ellis's questioning of Pucci, with one qualification. Judge Ellis may appear to have overstepped the bounds of proper judicial interrogation when he asked the criminal defendant's sole witness whether he had ever been convicted of a felony. Seen in the printed record, the absence of any particularized, good-faith basis made the question inappropriate.

■ However, while Judge Ellis's final question of Pucci may have been improvident, it was not so prejudicial as to deny Gastiaburo the opportunity for a fair and impartial trial. Judge Ellis was not requested to retract the question. The answer to it, promptly given, was in the negative. Thus, Gastiaburo's failure to object to Judge Ellis's interrogation during the trial is fatal to his argument on appeal.

### V. Ineffective Assistance of Counsel at Sentencing

■ Finally, Gastiaburo has contended that he was denied the effective assistance of counsel at sentencing when, after he claimed on the record that his trial counsel had been ineffective, his counsel failed to allocute on his behalf.

■ A claim of ineffective assistance of counsel should be raised by motion under 28 U.S.C. § 2255 in the district court and not on direct appeal, unless it "conclusively appears" from the record that defense counsel did not provide effective representation. *United States v. Fisher,* 477 F.2d 300, 302 (4th Cir. 1973) (citing *United States v. Mandello,* 426 F.2d 1021, 1023 (4th Cir.1970)); *see also United States v. DeFusco,* 949 F.2d 114, 120–21 (4th Cir.1991), *cert. denied,* ⸺ U.S. ⸺, 112 S.Ct. 1703, 118 L.Ed.2d 412 (1992); *United States v. Percy,* 765 F.2d 1199, 1205 (4th Cir.1985).

In the present case, the record on appeal does not conclusively demonstrate ineffective assistance of counsel. Therefore, we do not now address the issue on direct appeal. Gastiaburo may assert the claim in a § 2255 *habeas* motion, if he so chooses.

### VI. Conclusion

Accordingly, the judgment is

*AFFIRMED.*