**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 96-4647

GABRIEL MIGUEL TORRENS,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 96-4671

DARRYL JEROME BRYANT,
Defendant-Appellant.

Appeals from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Malcolm J. Howard, District Judge.
(CR-95-65-H)

Argued: April 8, 1998

Decided: June 26, 1998

Before WILKINS, LUTTIG, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Herscal Peele Williams, Jr., TWIFORD, MORRISON,
O'NEAL, VINCENT & WILLIAMS, L.L.P., Elizabeth City, North

Carolina, for Appellant Torrens; Danny Thomas Ferguson, Winston-Salem, North Carolina, for Appellant Bryant. Anne Margaret Hayes, Assistant United States Attorney, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Janice McKenzie Cole, United States Attorney, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

A jury found defendants, Darryl Bryant and Gabriel Torrens, guilty of conspiracy to possess with intent to distribute crack cocaine. The evidence at trial demonstrated a conspiracy in which the conspirators bought crack from and sold crack to each other for further distribution at the street level. The government's case against Bryant and Torrens consisted mainly of the testimony of twelve co-conspirators.[1] A police officer also testified about a 1993 search of Torrens' apartment that revealed a handgun, 3.6 grams of crack cocaine, $613 in U.S. currency, a pager, and a cellular phone. J.A. at 321-25, 326-27, 330.

Even according to the defendants' description of the testimony at trial:

> Eleven of the co-conspirators testified that they had bought or sold cocaine base from or to Bryant. Similarly, eight of the co-conspirators testified that they had taken part in drug transactions with Torrens. Of those eight, seven had sold to Torrens. He never sold to them.

_____

[1] Each of the twelve co-conspirators testified pursuant to a plea agreement which provided the witness the opportunity to cooperate in exchange for a § 5K1.1 sentence reduction.

2

Appellant's Brief at 5-6. In addition to the witness who testified that Torrens sold to him, J.A. at 210, another witness (William Lovick) testified that he and Torrens had a distributor in common who sold crack cocaine for them both, J.A. at 103-04.

Both defendants also testified at trial. Bryant denied having taken part in any drug activity. J.A. at 360-65. Torrens admitted that in late 1993, he purchased drugs with the intent to sell them and that he sold drugs to a confidential informant. J.A. at 397-98, 416. However, he denied being part of the conspiracy at issue.

On appeal, defendant Bryant challenges two evidentiary rulings by the district court, as well as the sufficiency of the evidence to support the district court's two-level sentencing enhancement for possession of a firearm. Defendant Torrens, in turn, challenges the sufficiency of the evidence for his conspiracy conviction. Finding no reversible error, we affirm both defendants' convictions and sentences.

Bryant first claims that he was deprived of a fair trial because the prosecutor asked him to comment on the veracity and credibility of the government's witnesses, J.A. at 371-72, and then referred back to his testimony in the state's closing argument, J.A. at 427-28, 431. Assuming that it was error for the prosecutor to ask the defendant to comment on the credibility of the government witnesses, the error was harmless. The prosecutor's question to Bryant provided him an opportunity to explain his theory of the case and to attempt to explain away all of the damning testimony of his co-conspirators by arguing that a police officer had suggested to those witnesses that they incriminate Bryant and that the witnesses all complied to curry favor with the officer. This argument was the essential premise of Bryant's defense -- as he denied any drug activity whatsoever -- and the prosecutors' provision of an opportunity to Bryant to articulate this defense surely cannot be said to have prejudiced him.

Second, Bryant claims that the district court erred in admitting testimony about his offer to provide a gun to a co-conspirator, Andre Cox, because the gun was not relevant to the drug conspiracy charge. However, the evidence showed that the offer to provide a firearm occurred during the course of a drug deal, J.A. at 205, and it can be inferred from this context that the offer was made in connection with,

3

or in furtherance of, the drug conspiracy. Cf . United States v. Collazo, 732 F.2d 1200, 1206 (4th Cir. 1984) (allowing the government to introduce handguns seized from drug defendants because "[t]he admission of handguns into evidence in drug cases has been consistently upheld as relevant to the issues raised by such cases"). In any event, the admission of Cox's brief testimony about the gun was not prejudicial. No witnesses testified that Bryant ever brandished or displayed a gun, Cox testified that he never received the gun, and after the brief references in Cox's testimony, the gun was not mentioned again during the trial.

Bryant next contends that the district court erred by assessing him a two-level enhancement under USSG § 2D1.1(b)(1) for possessing a firearm. USSG § 2D1.1(b)(1) identifies weapon possession as a specific offense characteristic of a drug offense, and provides that "[i]f a dangerous weapon (including a firearm) was possessed, increase by 2 levels." The district court's enhancement on this basis is reviewable only for clear error.

The pre-sentencing report (PSR) stated that Bryant's involvement in the crack conspiracy lasted from 1992 to 1994, J.A. at 609, and the evidence at trial established that fact. The PSR also reported that during that same period Bryant sold firearms:

> During [the time Bryant acted as a street-level distributor, he] also engaged in the illegal sale of firearms.. . . [Co-conspirator] Hargett specifically stated that he knew Darryl Bryant sold weapons. Further information about Darryl Bryant's activities involving firearms was provided by James Andre Moye who advised authorities that in 1993, he purchased two 9mm Glocks from Darryl Bryant for $150 each. In a May 1995 statement, Andre Cox recalled that he purchased 20 grams of cocaine base in 1993 and at that time, Darryl Bryant indicated that he could obtain 9mm weapons. Cox added that he knew at least two persons to whom Darryl Bryant had sold weapons.

J.A. at 609. Defendant challenged the credibility of these witnesses and submitted that there was no connection between the alleged weapons activities and the alleged drug activity.

4

However, the probation officer responded that

> [t]he evidence reflects that the defendant, during his routine dealings as a drug distributor, possessed and indiscriminately sold weapons to other drug dealers which they could in turn use in relation to these jointly undertaken drug trafficking activities. The probation officer views this as a significant connection between the weapons and the instant conspiracy.

J.A. at 618.

The evidence discussed in the PSR clearly demonstrated that the defendant possessed and sold guns during the course of the drug conspiracy, and the connection to the conspiracy can be inferred from the attempted sale to a co-conspirator. Moreover, at the sentencing hearing, Officer Shaver testified that William Lovick, Bryant's cousin and co-conspirator, "wrote in a letter that he and Mr. Bryant were engaged with a gentleman by the name of Herman King, and that he used to trade guns for cocaine to Herman King." J.A. at 505.[2] Thus, the evidence established a sufficient connection between the crack conspiracy and the gun(s) to justify the enhancement. Defendant certainly cannot establish that it was "clearly improbable" that the guns were connected to the drug conspiracy. See USSG§ 2D1.1 comment. (n.3). Accordingly, Bryant's sentence is affirmed.[3]

_____

[2] Bryant now contends that the"he" in this sentence refers to Lovick, not Bryant. Defendant apparently did not argue this ambiguity below, however, and the statement, quoted in part at J.A. 507-08, can certainly be fairly read to refer to Bryant, even if that is not the only reasonable reading.

[3] Defendant Bryant also asserts in his pro se supplemental brief that there was insufficient evidence to support his conviction for conspiracy with intent to distribute. This claim is frivolous. Numerous government witnesses testified that Bryant obtained cocaine from a number of suppliers -- sometimes through intermediaries -- and that Bryant and his cousin Lovick resold that cocaine to other distributors down the distribution chain. See, e.g., J.A. at 252-55 (testimony of Anthony Attmore); J.A. at 266-67 (testimony of Van Victor Cuthbertson); J.A. at 281 (testimony of Torian Koonce); J.A. at 296-98 (testimony of Pal Harvey Moore); J.A.

5

Defendant Torrens contends that there was insufficient evidence to support his conviction for conspiracy to possess with intent to distribute crack cocaine. He argues that he merely bought small quantities of crack from the conspirators for personal use and never sold that crack (although he admitted to selling other crack), and thus that he was the object of the conspiracy, not a participant. The evidence at trial, however, demonstrated that Torrens was purchasing from his co-conspirators in amounts consistent with street-level dealing and that he in fact engaged in such distribution. For example, the trial evidence established that Torrens bought crack from a conspirator, Misha Swindell, more than 20 times in one to seven gram quantities between 1991 and 1994, J.A. at 151-53, and that Swindell believed Torrens was reselling the crack, J.A. at 168, 151. [4] Moreover, there was direct evidence that Torrens was indeed selling crack. In addition to Torrens' own admission that he sold crack to a confidential informant in late 1993, J.A. at 397-98, William Lovick testified that he and Torrens had a common distributor named Tommy Harper, who worked for them selling crack. J.A. at 103. Witness Michael Andre Anderson also testified that he bought $300 of crack from Torrens at least once. J.A. at 210-11, 227.[5]

---

at 146, 148-51 (testimony of Misha Swindell); J.A. at 129-30, 132 (testimony of Harry Brown); J.A. at 231-32 (testimony of Marquis Bryant); J.A. at 173-74 (testimony of Anthony Henry); J.A. at 195-96 (testimony of Andre Cox).

Additionally, Bryant claims ineffective assistance of trial counsel because, he asserts, trial counsel failed to investigate and develop an alibi defense. This claim is not cognizable on direct appeal because the record is inadequately developed. See United States v. Gastiaburo, 16 F.3d 582, 590 (4th Cir. 1994) (holding that a claim of ineffective assistance of counsel "should be raised by motion under 28 U.S.C. § 2255 in the district court and not on direct appeal, unless it`conclusively appears' from the record that defense counsel did not provide effective representation").

[4] Swindell testified that Torrens"might come get a gram a day, he might come get three grams tomorrow, Friday he might come get seven grams." J.A. at 168. Swindell explained the frequency of transactions by testifying that a gram is not a large quantity to sell: "You can sell that and come right back." J.A. at 151.

[5] At one point in Anderson's testimony when he was asked about his purchase of crack from Torrens, Anderson referred to buying cocaine

The quantities of crack Torrens purchased were consistent with street-level dealing, and the evidence established that he was in fact a street-level dealer, as were most of his co-conspirators. Consequently, there was sufficient evidence to support his conviction.**6** Moreover, because Torrens' participation in the conspiracy was equivalent to that of most of his co-conspirators-- who were also street-level dealers -- he was not entitled to be sentenced as a "minor participant" in the conspiracy.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

_____

from Torian Koonce. However, it appears from the record that the reference to Koonce was either a slip of the tongue or a reporting error -- or at least, that the jury could have so concluded. Anderson had testified, just seconds earlier, that he had purchased cocaine from Torrens, J.A. at 210, and he responded just moments later to a question about the dates of his cocaine purchase from Torrens, by confirming that he bought from him in "'93 to '94." J.A. at 211.

**6** Both Bryant and Torrens also claim that the district court abused its discretion by asking government witness Anthony Attmore a few questions about his personal background and concluding the questioning by stating, "Good luck, Mr. Attmore," because they believe that this questioning evidenced favoritism toward the government witness. J.A. at 262-63. We do not perceive any favoritism of the government witness by the district court, and -- in any event -- the defendants failed to object to the district court's questioning below. Federal Rule of Evidence 614(c) requires any objection to the court's interrogation of a witness to be made during trial, and we have held that the failure to object at that time precludes appellate review of the issue unless the "trial judge's comments were so prejudicial as to deny a party an opportunity for a fair and impartial trial." Gastiaburo, 16 F.3d at 589-90 (citation omitted). There is certainly no evidence of such prejudice here.

7