**UNITED STATES of America,**

v.

**John Calvin PITTS, Defendant.**

No. 4:98cr70.

United States District Court,
E.D. Virginia,
Newport News Division.

Feb. 18, 1999.

---

Patrick David Kelley, Williamsburg, VA, for Defendant.

Michael Smythers, Assistant U.S. Attorney, Norfolk, VA, for U.S.

### *OPINION*

REBECCA BEACH SMITH, District Judge.

On February 2, 1999, this court heard defendant John Calvin Pitts's motion to suppress evidence seized during a search of his automobile on September 25, 1998. At the conclusion of the hearing, the court issued its ruling from the bench, denying defendant's motion. At that time, the court reserved the option to issue a written opinion at a later date.

### *I. Facts*

At the suppression hearing, the following facts were developed through the testimony of Lieutenant Stan Stout of the James City County police department. On September 25, 1998, Stout was a street level investigator assigned to the narcotics division. At approximately 10:30 p.m. that night, Stout received a call from a confidential, reliable informant concerning the defendant, John Calvin Pitts. The informant told Stout that Pitts had been selling crack cocaine that evening in the parking lot of a McDonald's restaurant in James City County, that Pitts had just left to get more crack, and that Pitts would return to the McDonald's within the hour. The informant also described the car that Pitts was driving, which description was consistent with Stout's own, prior knowledge of Pitts's car.

After the phone call, Stout picked up the informant and drove to Pitts's residence, where Stout did not see Pitts or the car that he was driving that night, a 1986 gold Ford Thunderbird. Stout then drove the informant back to the McDonald's and called for assistance from a uniformed police officer, Officer Booth. Stout, in an unmarked police unit, and Booth, in a marked police unit, waited in a Stuckey's restaurant/mart parking lot across the street from the McDonald's. From their vantage point, they had an unobstructed view of the McDonald's and a Texaco gas station/minimart located next to the McDonald's. As they waited, Stout told Booth that they would wait for Pitts to get into the McDonald's parking lot before stopping Pitts's vehicle. Stout also informed Booth that Pitts was likely armed with a .32 caliber handgun, which Pitts usually kept in the car's center console. This information about the handgun was conveyed to Stout by the informant. In addition, Stout also knew that Pitts had a previous conviction for felon in possession of a firearm.

At approximately 11:35 p.m., one hour and five minutes after first receiving the phone call from the informant, Stout observed Pitts's car turn into the Texaco station and park. Pitts went inside the mini-mart and made a purchase that he carried out to his car in a plastic bag. Stout testified that as he exited the store, Pitts looked across the road, directly at Stout and Booth. Pitts then got into his car and prepared to depart the Texaco station. Stout testified that Pitts pulled up to the road and sat there for fifteen to twenty seconds, with no traffic approaching from either direction. During this time, Pitts's headlights directly illuminated both officers and their vehicles. Stout also testified that Pitts knew Stout from prior law enforcement encounters, and, of course, could see Booth's marked police car. Stout testified that Pitts then turned onto the road and rapidly left the vicinity of the McDonald's and the Texaco. Stout then directed Booth to stop Pitts's automobile. Booth then pursued Pitts and stopped him, followed closely by Stout.

As Stout approached Pitts's vehicle, Booth ordered Pitts to get out of the car, but he

refused to do so. When Stout came up to the driver's side door, he noticed that Pitts's car was still in gear and that Pitts had his foot on the brake. Fearing that Pitts would attempt to drive off, Stout told Booth to pull Pitts from the car, if necessary. At that time, Pitts then put the car into park and voluntarily left the vehicle. Stout then had Booth take Pitts to the rear of the vehicle. As Booth was taking Pitts to the rear of the car, Pitts saw Stout about to enter the passenger compartment of the vehicle, and Pitts then turned quickly back toward the driver's door. At this point, Stout blocked Pitts's access to the vehicle and directed Booth to handcuff Pitts. As Booth did so, Stout entered the passenger compartment and opened the center console, where Stout found a .32 caliber handgun. Stout also found suspected crack cocaine in the left (driver's) door pocket. Following the sweep of the passenger compartment, Stout then conducted a "pat down" frisk of Pitts, which uncovered $30 in Pitts's front pocket and $500 in large denominations in Pitts's wallet. Pitts was then arrested and charged with various narcotics and firearms violations.

## II. Analysis

Defendant argues that the evidence recovered in the search should be excluded because the police did not have either probable cause to arrest Pitts and conduct a search incident to arrest, or probable cause to search Pitts's vehicle. Even if there was probable cause, defendant also claims that the warrantless search was not justified because there were no exigent circumstances.

■ Although not pursued vigorously at oral argument, in its brief to the court, the government contended that Stout had probable cause to arrest Pitts and search his car incident to arrest. *See New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). The court cannot agree with this position, however. In *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court adopted a "totality of the circumstances" test. The Court in *Gates* emphasized that the "value of corroboration of details of an informant's tip by

independent police work" is important under the totality of the circumstances test. *Id.* at 241–42, 103 S.Ct. 2317. Under this balancing approach, corroboration of information provided by an informant is generally used to demonstrate the reliability and credibility of information provided by an informant, while, at the same time, alleviating the need to demonstrate the basis for the informant's knowledge. *Id.* at 230, 103 S.Ct. 2317. Conversely, the stronger the showing on the informant's basis of knowledge, the less corroboration is needed in order to demonstrate the credibility of the information.

Here, there was no testimony as to the basis for the informant's knowledge about Pitts. There is no indication that the informant had just bought drugs from Pitts or that the informant was involved in selling drugs with Pitts. There was also no indication that the informant had ever been inside Pitts's car. Furthermore, although Stout testified to the informant's reliability on previous occasions, none of the earlier occasions involved Pitts, nor did Stout testify that he knew the informant to have any prior association with Pitts prior to the phone call on September 25, 1998. Therefore, in order to establish the reliability and credibility to a sufficient degree, Stout needed to corroborate the informant's information. It is apparent to the court that by picking up the informant and going to Pitts's residence, that Stout was, indeed, attempting to corroborate the informant's story. Unfortunately, although Pitts did return to the vicinity of the McDonald's, which Stout admitted was not a known drug-trafficking area, Pitts went, instead, to the Texaco gas station located next to the McDonald's. Pitts never did return to the McDonald's parking lot, apparently because he discovered that he was under police surveillance. Although properly suspecting that Pitts was involved in criminal activity, at the time Stout saw Pitts go into the Texaco, which was the first time Stout had seen Pitts that evening, he did not have probable cause to believe that Pitts had committed a crime. Had Pitts left the Texaco and proceeded into the McDonald's lot, the argument for proba-

ble cause would be a closer one.[1] Had Stout seen Pitts conduct an apparent drug transaction, then there clearly would have been probable cause, based on the informant's information and his own observation, for Stout to arrest Pitts. However, without this additional information, Stout did not have probable cause to arrest Pitts based solely on the informant's statement that Pitts had gone to replenish his drug supply.[2]

At oral argument, however, the government pursued a more tenable position. It contended that the stop was justified because there was a reasonable, articulable suspicion that Pitts was involved with criminal activity and the sweep of the passenger compartment was necessary because Stout had a reasonable suspicion that Pitts was armed and presented a danger to officer safety.

■ It is well-settled that the police may conduct an investigatory stop when they have a reasonable suspicion, based on articulable facts, that the person has committed, or is about to commit, a crime. *United States v. Hensley*, 469 U.S. 221, 229, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Furthermore, the Supreme Court has held that "the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). The Court in *Long* also rejected the argument that the search was unreasonable because the suspect was restrained by the officers. *Id.* at 1051, 103 S.Ct. 3469. The Court reasoned that a defendant may break from police control and retrieve a weapon from the automobile, *id.* at 1052, 103 S.Ct. 3469, or that there may be occasion for a defendant to get back into his vehicle during the course of the stop or immediately following the stop, at which time the defendant could then pose a danger to police officers. *Id.* at 1053, 103 S.Ct. 3469.

■ In this case, Officer Stout had a reasonable and articulable suspicion that Pitts was engaged in criminal activity. He had information from a reliable, confidential informant that Pitts had been selling drugs at the McDonald's, had left, and was going to be returning "within the hour" to sell more drugs. Officer Stout attempted to verify this information by confirming that Pitts, whom

---

1. Significantly, Stout himself testified that he told Booth that they were not going to stop Pitts until he reached the McDonald's parking lot.

2. At argument on this motion, the government also proffered *United States v. Gastiaburo*, 16 F.3d 582 (4th Cir.1994), in support of its argument that there was probable cause in this case. In *Gastiaburo*, the police arrested the defendant after he consented to a warrantless search by police during a routine traffic stop. The search revealed drug paraphernalia, $10,000 in cash, and a quantity of crack cocaine. Several weeks later, one of the investigators was meeting with Dina Viola, who was a passenger in the car at the time of defendant's arrest, but who was not herself arrested. Viola asked whether the officer had found the gun. When the officer indicated that he had not, Viola told him about a hidden compartment behind the radio in defendant's car, and that the compartment contained more drugs and money, as well as a handgun. Armed with this knowledge, the investigator immediately went to the impound lot and found the compartment and all that it contained. Defendant challenged the search of the hidden compart-

ment, which was upheld at the district court and on appeal because there was probable cause to believe the search would uncover contraband.

Unlike *Gastiaburo*, however, the officers in this case did not have such specific knowledge of where the drugs were located in Pitts's car at the time he was stopped. In fact, the information provided by the informant only indicated that Pitts had left the McDonald's to get more drugs, not that he had actually gotten more drugs. In addition, Stout's testimony also gave no indication of how the informant knew this information about Pitts, including the information about a gun possibly located in the console. In *Gastiaburo*, by way of contrast, Viola had a great degree of credibility because she was actually in the car with the defendant before and during the stop by the police. When a passenger in the vehicle pointed to a specific location in the car where drugs and a gun were located, the officer had probable cause to search that exact spot. *Id.* at 586. The instant case, however, does not contain the same level of detailed information, credibility, and specificity as in *Gastiaburo*. Thus, the government's probable cause argument is not supported by that case.

Stout knew to be involved with the drug trade and also knew to be a convicted felon, was not at home. Stout then staked out the vicinity of the McDonald's by sitting in the parking lot across the road from the McDonald's with Officer Booth. Stout and Booth also suspected, based on the informant's report and Stout's own knowledge of Pitts, that Pitts was likely to be armed with a .32 caliber handgun. Approximately one hour and five minutes after receiving the phone call from the informant, Stout observed Pitts return to the vicinity of the McDonald's. However, instead of returning to the McDonald's parking lot, Pitts drove up to the adjoining Texaco station and proceeded to make a purchase of what Pitts believed to be a six pack of beer. After emerging with his purchase, Pitts looked across the road directly at Stout's location. Pitts then got into his vehicle, and, instead of pulling into the adjoining McDonald's parking lot, pulled out to the road with his headlights fixed directly on the point where Stout and Booth were located. After approximately fifteen to twenty seconds, Pitts then pulled onto the road and proceeded to depart the area. Stout and Booth had a reasonable suspicion, based on the confidential informant and their own knowledge, that Pitts was involved in criminal activity, together with the probability (as they viewed it at the time) that Pitts had spotted their stakeout and had then changed his plans to return to the McDonald's lot. Thus, the court finds that the stop of the vehicle was a permissible *Terry* stop.

■ Then, based on Stout's knowledge and the information provided by the informant, Stout and Booth were also justified in immediately frisking the interior of the vehicle for weapons in order to ensure their own safety as they investigated Pitts's activities. The concern for officer safety expressed in *Terry* and *Long* is just as, if not more, apparent in the instant case where the officers had a reasonable suspicion that Pitts was armed *before* they stopped him.[3] *See United States v. Sinclair,* 983 F.2d 598, 603

(4th Cir.1993) ("the officer's reasonable belief may derive as much from his experience in similar cases as from his precise knowledge of the dangerous propensities of the suspect at hand"). In addition, there is no requirement that the suspect be asked a question between the time he is stopped and the frisk for weapons initiated. *United States v. Moore,* 817 F.2d 1105, 1107–08 (4th Cir.1987). Officer Stout immediately found the .32 caliber handgun in the center console, where he suspected the gun was located, based on the previously obtained information from the informant. Given Stout's knowledge that Pitts was a convicted felon, finding the gun gave Stout probable cause to arrest Pitts. The remainder of the search was then justifiable not only as a search for further weapons, *Long,* 463 U.S. at 1049, 103 S.Ct. 3469, but also as a search incident to Pitts's arrest. *Belton,* 453 U.S. at 454, 101 S.Ct. 2860.

### III. Conclusion

The court finds that the officers in this case had a reasonable, articulable suspicion of criminal activity that justified stopping Pitts's automobile. In addition, they also had a reasonable suspicion before they stopped Pitts that he was possibly armed and posed a potential danger to their safety, thus justifying the immediate frisk of the passenger compartment of Pitts's automobile. Accordingly, the challenged search did not violate the Fourth Amendment, and the motion to suppress the evidence retrieved pursuant to the search and subsequent arrest is **DENIED.**

The Clerk is **DIRECTED** to send a copy of this Opinion to counsel for the parties.

It is so **ORDERED.**

---

**3.** In *Long,* as in *Hensley,* 469 U.S. at 235, 105 S.Ct. 675, the officers developed the reasonable suspicion that the defendant was armed only after the *Terry* stop was initiated. In each case, the officers observed a weapon, or suspected weapon in the vehicle, which justified the subsequent frisk.