UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.                                                            No. 99-4307

MONTE CARL GLOVER,
            *Defendant-Appellant.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Marvin J. Garbis, District Judge.
(CR-98-240-MJG)

Argued: April 6, 2001

Decided: May 17, 2001

Before WILLIAMS, TRAXLER, and KING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Harold Irwin Glaser, Baltimore, Maryland, for Appellant. Martin Joseph Clarke, Assistant United States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** Lynne A. Battaglia, United States Attorney, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

Monte Carl Glover, convicted of drug trafficking and sentenced to 151 months incarceration, appeals the district court's order refusing to suppress evidence recovered from his automobile. Glover contends that the impoundment of his car constituted an illegal seizure, and that this illegality tainted the evidence obtained during a subsequent search of the car. Although the search itself was conducted pursuant to a valid warrant, Glover asserts that the district court erred by failing to suppress the evidence yielded by that search. We disagree, and for the reasons set forth below, we affirm the district court.

I.

A.

On May 7, 1998, after receiving an anonymous tip, members of the Baltimore Violent Crime Safe Street Task Force ("Task Force") began following two men in a black Mazda, later identified as Glover and his co-defendant, Tyrone Servance. At about 1:10 in the afternoon, Servance parked the Mazda in the lot of the Spring Valley Apartments in Cockeysville, Maryland, which he and Glover then entered. The Task Force officers proceeded to watch the apartment building, meanwhile running a vehicular records check on the Mazda. Their records check indicated that Servance (the driver) was not the owner of the Mazda, and that his license had been suspended. The officers also ran a check on a Nissan Maxima parked next to the Mazda, which revealed that the Nissan was registered to a Marc Glover, who shared an address with one of the registered owners of the Mazda. While conducting their surveillance, the officers spoke to a state police trooper who lived in the apartment building. The police trooper recognized Servance by photo and identified him as residing in Apartment L. He also recognized Glover as an occasional visitor to the apartment.

Later that afternoon, Servance left the apartment building and drove to a Wendy's restaurant, where he was observed conducting a

suspicious exchange with a woman in another car. After witnessing the transaction, the Task Force officers advised two uniformed Baltimore City Police officers that Servance was driving on a suspended license and could be involved in drug activity. Soon thereafter, the police arrested Servance for driving on a suspended license. After discovering a stolen handgun on Servance's person, the police searched the Mazda and recovered an ammunition clip and 4.5 ounces of crack cocaine.

Meanwhile, the Task Force officers continued their surveillance of the apartment building. Glover emerged from the building at 5:42 p.m., drove off in his Nissan, parked in the garage of a local mall, and then entered the mall.[1] At about 8:00 p.m. that evening, while the officers looked on, an unidentified woman approached Glover's parked Nissan and attempted to gain access; when questioned by Task Force officers, she claimed that she was checking to make sure that the doors were locked.[2] The officers continued their surveillance until the garage closed, but Glover never returned to his car.

Apprised of Servance's arrest and the products of the search of Servance and the Mazda, the officers decided to seek search warrants for both the apartment and the Nissan. At about 9:30 p.m., without having obtained such warrants, the police towed the Nissan from the garage to the FBI vehicle impoundment lot. Several hours later (around midnight), a circuit court judge heard the officers' application for search warrants covering the apartment and the Nissan. The judge

---

[1]Servance was arrested shortly after Glover's departure from the apartment complex, and specific information regarding the fruits of that arrest and the search of the Mazda was conveyed to the officers monitoring Glover's Nissan.

[2]There is some dispute about how the woman, Dawn Leonard, explained her decision to check the doors to Glover's car. At the suppression hearing, inconsistent statements were introduced as to whether Glover specifically instructed Ms. Leonard to secure the car, or whether she just happened to notice his car and decided to check the doors (knowing that he sometimes left them unlocked). The discrepancy is inconsequential, since neither explanation would dispel the officers' reasonable belief that Ms. Leonard was sent as a "decoy" to gauge whether the car was being watched.

issued a warrant as to the apartment, but denied a warrant as to Glover's car. Armed with a search warrant, the officers immediately commenced a search of the apartment, which yielded approximately a kilogram of crack cocaine, thousands of empty vials, ammunition, almost $6,000 in cash, two money counting machines, and identification in Glover's name.

Using the additional information discovered from the apartment search, the officers reapplied four days later (May 12, 1998) for a search warrant for Glover's Nissan. This time, a search warrant was issued.[3] Among the items recovered from the ensuing search of the Nissan were almost 800 vials of crack cocaine, a loaded pistol, several pagers, two knives, and a police scanner. Based in part upon this evidence, Glover was indicted on multiple drug-related charges, including possession with intent to distribute crack cocaine, conspiracy to distribute crack cocaine, and carrying a firearm during and in relation to a drug trafficking crime.

B.

In a pre-trial motion, Glover sought to suppress the introduction of physical evidence recovered from the Nissan, on the theory that the car was seized without probable cause and retained by the authorities until they could muster enough information to obtain a search warrant. The district court, in an order entered on February 8, 2001, initially granted Glover's motion to suppress, finding that the officers lacked probable cause when they impounded the Nissan. Emphasizing that the authorities "kept the car impounded for four or five days after the initial impoundment," J.A. 274, the trial judge concluded that "a detention for that length of time, absent probable cause, simply cannot be tolerated." *Id.* at 275.

The Government immediately filed a motion for reconsideration of the suppression order, stressing that the officers possessed probable cause to search the Nissan just hours, rather than days, after the allegedly illegal seizure. Once probable cause existed, the Government asserted, the officers were entitled to search the car — with or without

---

[3]Between the initial denial and eventual issuance of the search warrant, the Nissan remained parked and secured on the FBI impoundment lot.

a warrant. The district court, in a Memorandum and Order filed February 11, 2001, rescinded its previous order and denied the motion to suppress. The challenged evidence was then introduced against Glover at trial, and he was convicted on one of the two drug charges.[4]

## II.

We review the decision of the district court to grant the Government's motion for reconsideration for abuse of discretion. *See United States v. Dickerson*, 166 F.3d 667, 678 (4th Cir. 1999) (adopting abuse of discretion standard for denials of motions for reconsideration), *rev'd on other grounds*, 530 U.S. 428 (2000). We observe, however, that a district court "by definition abuses its discretion when it makes an error of law." *Dickerson*, 166 F.3d at 678 (quoting *Koon v. United States*, 518 U.S. 81, 100 (1996)). Thus, in reviewing whether the district court erred in rescinding its earlier suppression ruling, we must necessarily address the propriety of the original ruling. *See United States v. Herrold*, 962 F.3d 1131, 1136 (3d Cir. 1992) ("[B]ecause an appeal from a denial of a motion to reconsider necessarily raises the underlying judgment for review, the standard of review varies with the nature of the underlying judgment."). Since the district court's underlying suppression decision involved an interpretation and application of law, we review it de novo. *See id.*

## III.

The question on appeal is whether the district court erred in refusing to suppress evidence obtained from Glover's car on the basis that such evidence was "tainted" by the purportedly unlawful impoundment of the Nissan. Because the search was conducted pursuant to a properly issued search warrant — supported by probable cause acquired independently of the contested impoundment — we conclude that the evidence was admissible.

---

[4]Glover was convicted of conspiracy to distribute a controlled substance, 21 U.S.C. § 846, and possession of a controlled substance with intent to distribute, 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. He was acquitted on his related firearm count.

A.

Although it did not formally concede this point, the Government essentially assumed for purposes of appeal that the initial impoundment of Glover's Nissan resulted from an illegal seizure. That is, the Government has not actively challenged the district court's assertion — and the state circuit judge's implicit finding — that the officers lacked probable cause "at the time they seized the Nissan and took it to the FBI impounding lot." J.A. 274. Given the posture in which this appeal is presented to us, we also assume, without deciding, that probable cause did not exist at the time of impoundment (about 9:30 p.m. on May 8, 1998).[5]

Proceeding on this assumption, the authorities indicate that a vehicle cannot be impounded for the purpose of conducting a search in the absence of probable cause. *See, e.g.*, *United States v. DeGuay*, 93 F.3d 346, 352 (7th Cir. 1996) ("An impoundment must either be supported by probable cause, or be consistent with the role as 'caretaker' of the streets and completely unrelated to a criminal investigation."). Although it was permissible for the police officers to maintain a surveillance of and secure Glover's Nissan, in the absence of probable cause the impoundment must be regarded as an illegal seizure.

Within hours of Glover's car being impounded, however, probable cause developed that clearly would have justified a search of the car. At about midnight, a warrant to search the apartment was issued and immediately executed, yielding significant quantities of cocaine and ammunition, a bulletproof vest, and identification for both Servance and Glover. The police at that point were equipped with potent evidence that Glover was closely associated with Servance, and that he frequently visited — and indeed kept personal possessions at — an apartment that was being used for drug distribution activities. The fact that Glover had not returned to his car before the mall closed, but

---

[5]We point out, however, that there was ample evidence to support the officers' belief that probable cause existed when they impounded the car. Additionally, if called upon to determine the issue, we would, on this record, in all likelihood find probable cause present for the impoundment.

instead ostensibly sent a female decoy to determine whether his car was being observed, presented further cause for suspicion.[6]

Thus, by the early hours of May 9, 1998, the officers certainly possessed probable cause and, under the "automobile exception" to the Fourth Amendment, could have legally searched the car without a warrant.[7] *See, e.g.*, *Chambers v. Maroney*, 399 U.S. 42 (1970) (recognizing that officers may conduct warrantless searches on a vehicle, even after it has been impounded, provided it was stopped and seized for probable cause). That Glover's car was impounded, and effectively immobilized, does not remove this situation from the "automobile exception," or render a warrantless search invalid. *See United States v. Gastiaburu*, 16 F.3d 582, 586 (4th Cir. 1994). The police did not avail themselves of this immediate opportunity, but allowed four days (including a weekend) to pass before applying for, and receiving, a valid search warrant for Glover's Nissan.

## B.

In seeking to suppress the Nissan evidence, Glover maintains that the illegality of its seizure tainted the subsequent search, and that "no independent evidence was found during the search of the residence which would vitiate the initial taint stemming from the warrantless seizure of the Nissan." Appellant's Br., at 24. In advancing this argument, Glover misconstrues the independent source doctrine's application to this case. Importantly, the evidence that Glover sought to suppress was not obtained in the course of the purportedly illegal sei-

---

[6]*See supra* note 2.

[7]The district court, in granting the Government's motion for reconsideration, nevertheless expressed reservations as to "whether there really was probable cause for the search." J.A. 286. These reservations, curiously enough, appear to have been predicated on the fact that Glover left behind a bulletproof vest, and vast quantities of crack, when he left the apartment. In our view, the apartment's contents greatly enhance, rather than diminish, the likelihood that Glover possessed drugs and related paraphernalia in his car. We are entirely satisfied that a "person of reasonable caution" would believe that contraband would be found in Glover's car — and, thus, that the search was justified. *See United States v. Jones*, 31 F.3d 1304, 1312-13 (4th Cir. 1994).

zure. While it is true that, by impounding the Nissan, the police prevented the removal of evidence from inside it, the police derived no information or evidence from the seizure. We are not presented with the typical independent source scenario in which the Government seeks to introduce illegally obtained evidence on the basis that it would have been discovered through separate, legal means. Rather, the evidence contested here was obtained pursuant to a valid search warrant, issued on the basis of information acquired independently of the seizure.

We therefore must reject Glover's contention that the evidence was tainted by the initial illegality so as to require its exclusion as "fruit of the poisonous tree." Quite simply, the nexus between the arguably illegal seizure and the search yielding the challenged evidence was "sufficiently attenuated to dissipate the taint" of the illegal action. *See Segura v. United States*, 468 U.S. 796, 815 (1984) (regarding a valid search warrant to search apartment as a "means sufficiently distinguishable" from the officers' illegal entry to purge the evidence discovered during the search from any taint). In defining the contours of the exclusionary rule, the Supreme Court has emphasized that "evidence will not be excluded as 'fruit' unless the illegality is at least the 'but for' cause of the discovery of the evidence." *Id.* Where the illegal act — here, the purportedly premature seizure of Glover's car — does not contribute to the discovery of the evidence, suppression is unwarranted. *See id.*

As we have emphasized, the police did not acquire any information about the contents of Glover's car when they impounded it, and there was absolutely no causal nexus between the seizure and the subsequently issued search warrant. Had the police officers simply maintained their surveillance of Glover's car for several hours and impounded it after the apartment search had been completed, the car's contents would have been discovered and unquestionably admitted. Instead, based on their good faith belief that they possessed probable cause, the officers towed the car to a more secure location. This choice cannot vitiate the subsequently-issued search warrant upon which the challenged evidence was discovered. *See id.* at 814 ("Had the police never entered the apartment, but instead conducted a perimeter stakeout to prevent anyone from entering the apartment and destroying evidence, the contraband now challenged would have been

discovered and seized precisely as it was here. The legality of the initial entry is, thus, wholly irrelevant under [*Wong Sun v. United States*, 371 U.S. 471 (1963).]").

## IV.

Because the evidence challenged here was obtained pursuant to a valid search warrant issued independently of the seizure of Glover's car, we conclude that it was not subject to suppression. Accordingly, we affirm the district court's order allowing its admission.

*AFFIRMED*