UNITED STATES of America, Appellee,

v.

Terry WILSON, Appellant.

No. 91–3235.

United States Court of Appeals,
Eighth Circuit.

Submitted March 10, 1992.

Decided May 19, 1992.

Rehearing Denied June 18, 1992.

---

Mark C. Myer, Cedar Rapids, Iowa, argued, for appellant.

Caniel C. Tvedt, Cedar Rapids, Iowa, argued, for appellee.

Before GIBSON, Circuit Judge, LAY, Senior Circuit Judge, and LOKEN, Circuit Judge.

LAY, Senior Circuit Judge.

Terry Wilson was convicted of possession with the intent to distribute methamphetamine in violation of 21 U.S.C. § 841 (1988). On appeal, Wilson challenges the district court's[1] denial of his motion to suppress certain evidence and claims error in the admission of testimony of a drug agent that 130 grams of methamphetamine is not a "user" quantity. We affirm.

BACKGROUND

On January 4, 1990, a confidential informant and Agent Michael Dudley of the Federal Bureau of Investigation engaged in a general discussion regarding drug trafficking in Eastern Iowa. Special Agent Terry Klooster of the Iowa Division of Criminal Investigation, a member of the same federal drug task force as Dudley, met with the informant on January 12, 1990, and the informant told him that Wilson was attempting to set up a methamphetamine lab in the area. The informant called Klooster on January 23, 1990, and revealed that Wilson possessed one-half pound of methamphetamine which he was trying to sell. The informant indicated that he and Wilson would travel that day from a small nearby town to a designated bar in Cedar Rapids, Iowa, trying to find a buyer for the entire amount of the drug. The informant also stated that they would travel to Cedar Rapids in a minivan and a blue Ford Escort and the methamphetamine would be contained in a silver-colored metal briefcase. Klooster asked the informant if he would arrange for a small purchase of methamphetamine from Wilson, to which the informant agreed. The informant later notified Klooster that Wilson would only sell the drug in its half pound form and not the smaller portion desired.

Law enforcement officials set up surveillance around the city in an effort to observe the actions of the two men. Dudley and Klooster eventually spotted Wilson and the informant sitting with another person at the designated bar in Cedar Rapids. There the informant covertly told Klooster that Wilson still possessed the methamphetamine, and that it was contained in the metal briefcase in the blue Ford Escort in the bar's parking lot. Klooster then stepped outside and observed the briefcase in the back seat of the car. Wilson attempted to drive away from the bar approximately one hour later but was prevented from doing so by a police vehicle. Klooster and Dudley approached Wilson at this time and informed him that they had probable cause to believe he was in possession of methamphetamine. Wilson subsequently drove his car, in the company of law enforcement officials, to the federal building in Cedar Rapids. Although Wil-

---

**1.** The Honorable David R. Hansen, United States District Judge for the Northern District of Iowa.

son was not placed under formal arrest, there is no dispute that Wilson was not free to leave and that his detention constituted an arrest. No questioning was done or search performed until a search warrant was issued by a magistrate judge that same night. Once the warrant was executed, agents found the briefcase to contain over 130 grams of methamphetamine.

At trial Agent Dudley testified that, based upon his experience and training, 130 grams of methamphetamine was a larger quantity of the drug than that generally possessed by users. Wilson's objection to this testimony was overruled. The jury returned a guilty verdict on May 29, 1991. The court sentenced Wilson to sixty-five months imprisonment and five years of supervised release.

DISCUSSION

■ Wilson argues that the information obtained from the informant by law enforcement officials did not provide probable cause for his warrantless arrest and seizure of the silver briefcase. Wilson asserts that the trial court erred in relying on *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), in holding that corroboration of a few nonsuspicious, easily predicted, and generally known innocent details provided by the informant were sufficient to establish probable cause. He cites four reasons why this reliance was improper: (1) The informant's refusal to introduce Klooster to Wilson at the bar the night of his arrest seriously undermined the informant's information about Wilson having drugs for sale; (2) the informant's claim that Wilson was at the bar to sell drugs was not borne out as authorities only observed behavior which was not suggestive of illegal acts; (3) Wilson was not at the bar at the time the informant originally told authorities he would be; and (4) there is no evidence that Wilson drove the blue Ford Escort to the bar as predicted by the informant-Wilson only walked to the car upon leaving the establishment.

Although we think the issue is close, we agree with the district court's application of *Gates* in holding that probable cause exists when there are sufficient facts to justify a prudent person's belief "that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332. This justified the seizure of the silver briefcase as well as Wilson's arrest. In reviewing the law enforcement officials' determination of probable cause, the court must look to the totality of the circumstances and "give due weight to the inferences that can be drawn from the officer's general experience." *United States v. Flett*, 806 F.2d 823, 827 (8th Cir.1986). Probable cause exists to make a warrantless arrest when "at the moment of the arrest, the collective knowledge of the officers involved, was 'sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense.'" *United States v. Wajda*, 810 F.2d 754, 758 (8th Cir.) (quoting *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964)) (citation omitted), *cert. denied*, 481 U.S. 1040, 107 S.Ct. 1981, 95 L.Ed.2d 821 (1987).

The tip upon which agents acted was substantially corroborated by observations of the agents. As Justice White observed in his concurring opinion in *Gates*:

> Even, however, had the corroboration related only to completely innocuous activities, this fact alone would not preclude the issuance of a valid warrant. The critical issue is not whether the activities observed by the police are innocent or suspicious. Instead, the proper focus should be on whether the actions of the suspects, whatever their nature, give rise to an inference that the informant is credible and that he obtained his information in a reliable manner.

462 U.S. at 269, 103 S.Ct. at 2349; *see also Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) (informant's tip sufficient for probable cause where informant accurately predicted defendant's physical characteristics, the clothes defendant wore, the bag defendant carried, and defendant's manner of walking).

This court applied similar reasoning in *United States v. Reiner Ramos*, 818 F.2d 1392 (8th Cir.1987), where we stated as follows:

[T]he corroboration of minor, innocent details can suffice to establish probable cause. "The theory connecting reliability and corroboration is that an informant who is correct about some things more likely will be correct about critical unverified facts, and it is not necessary to a finding of reliability that the corroboration extend to illegal activity as well as to innocent details."

*Reiner Ramos*, 818 F.2d at 1397 n. 7 (quoting *United States v. Reivich*, 793 F.2d 957, 960 (8th Cir.1986)) (citations omitted). The informant told agents where he and Wilson would be that evening, described the container in which the drugs were stored, and described the car in which the drugs were transported. Uncertainty in details such as meeting time does not make the information "fatally deficient when considered in light of its detail and the degree to which it was corroborated by police investigation." *Reiner Ramos*, 818 F.2d at 1397 n. 6. Also, the informant's veracity is supported by statements he made against penal interest, providing general information regarding drug trafficking and telling the agents he had a reputation of being heavily involved in such activity himself. *See Reivich*, 793 F.2d at 959. Unlike the anonymous tipster in *Gates*, the agents here had the opportunity to confront the informant and determine first-hand whether he appeared to be a credible person. Based on the totality of these circumstances, we conclude the agents possessed sufficient probable cause to have Wilson accompany them to the federal building, and to obtain a search warrant for the silver briefcase.[2]

■ Wilson also argues that the court improperly allowed the drug agent to testify as to whether 130 grams of methamphetamine constitutes a user quantity. He contends that this testimony improperly touched upon the defendant's mental state or condition, constituting an element of the crime charged in violation of Federal Rule of Evidence 704(b).[3]

We find no abuse of discretion by the district court in allowing Agent Dudley to testify regarding typical user quantities of methamphetamine. Such testimony aids the jury by putting the drug dealer in context with the drug world. It is a reasonable assumption that a jury is not well versed in the behavior and average consumption of drug users. *See United States v. McDonald*, 933 F.2d 1519, 1522 (10th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 270, 116 L.Ed.2d 222 (1991). The district court was careful to ensure that the expert testimony of Agent Dudley did not address matters which the jury itself could evaluate. Wilson's objection, properly overruled by the district court, was actually one of foundation and not properly based on rule 704(b). The claim that the question regarding "user quantities" produced improper testimony concerning Wilson's mental state fails, as nowhere in the record is there a specific statement in which Agent Dudley says that Wilson had the intent to distribute the methamphetamine. The determination by the district court that the agent was qualified to testify as to the significance of quantities, purity, and price of the drug was not an abuse of discretion.

For the foregoing reasons, we find no error in the conviction of the defendant by

---

**2.** At the time of the arrest, the agents delayed their search until they were able to obtain a warrant to search the closed metal container. *See United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) (unreasonable search occurred where officers opened a locked footlocker seized from the trunk of an automobile pursuant to a lawful arrest, without first securing a search warrant). However, a year after this incident the Supreme Court decided *California v. Acevedo,* —— U.S. ——, 111 S.Ct. 1982, 1991, 114 L.Ed.2d 619 (1991), authorizing the immediate warrantless search of closed containers found in automobiles where probable cause exists to believe the containers hold contraband or evidence.

**3.** This rule states:

No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

Fed.R.Evid. 704(b).

the jury or the sentence handed down by the district court.

Judgment affirmed.