IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1511-11






 

THE STATE OF TEXAS



v.



GILBERT DUARTE, Appellee





ON APPELLEE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FOURTH COURT OF APPEALS


BEXAR COUNTY





 Cochran, J., delivered the opinion of the Court in which Meyers, Price,
Womack, Johnson, Keasler, Hervey, and Alcala, JJ., joined. Keller, P.J.,
concurred.


O P I N I O N 


 

 Appellee, Gilbert Duarte, was charged with possession of cocaine found during a
search of his house that was made pursuant to a warrant. The affiant police officer relied
upon information provided by a first-time informant who was providing information with the
expectation of leniency on his pending criminal charges. We agree with the trial judge, who
found that the affidavit in this case failed to provide the magistrate with a substantial basis
for concluding that probable cause existed to search Mr. Duarte's home. We therefore
reverse the court of appeals, which had itself reversed the trial judge's order granting
appellee's motion to suppress. (1)

I.


 Gilbert Duarte was charged in a two-count indictment with possession of more than
four grams, but less than two hundred grams, of cocaine. He filed a motion to suppress,
alleging that the search-warrant affidavit authorizing the search of his home was not
supported by probable cause. At the hearing on the motion, Mr. Duarte argued that the 
affidavit did not meet Fourth Amendment requirements because it was based solely upon a
tip from a first-time informant (2) looking for "a deal" on his own pending criminal charges. 

 The warrant in this case was supported by Detective Phillips's two-page affidavit: 

 Before me, the undersigned authority, a Magistrate, Bexar County, Texas, on
this day personally [a]ppeared Detective Roan Phillips #2421, who being by
me duly sworn upon oath, deposes and says: That he has a good reason to
believe and does believe that a certain place in Bexar County, Texas described
as a two story wood frame house, located at and known as and numbered as
10910 Indigo Creek, and any and all garages, outhouses, edifices, structures,
openings, and enclosures thereto attached;

 In the City of San Antonio, Bexar County, Texas and being the premises under
the control and in charge of Gilbert Duarte 08-17-87 is a place where a
controlled substance, to wit: Cocaine is unlawfully possessed in violation of
the Texas Health and Safety Code, and that such belief of the affiant is
founded upon the following information: Affiant has been a San Antonio
police officer for over fourteen years. During my tenure I have conducted
narcotic investigations for 4 years and 9 months. Affiant did on the 28th day
of September, 2008, receive information from a credible individual who is
currently facing pending criminal charges and provided the information with
the expectation that his/her cooperation with law enforcement would, if proven
valid, be called to the attention of authorities, for the possible dismissal of
charges, or a favorable plea bargain sentence.

 Law enforcement officers other than what has been stated have not promised
the cooperating individual anything in exchange for his/her information. I
believe that in this instance it adds to the credibility of the individual, because
he/she will not benefit if his/her information does not prove valid.

 I explained to the cooperating individual that it jeopardizes his/her
opportunity for leniency if law enforcement believes or discovers that he/she
has provided incorrect information in a bad faith attempt to obtain leniency.
The credible individual's statement to me that the information is true enhances
the probability that the information is correct.

 I also explained to the credible individual Texas Penal Code Statue 37.08,
False reports to peace officer. Describing the possible criminal penalties for
giving false information to law enforcement. The credible individual said
he/she understood, and continued to maintain that the information is correct.

 I know that this credible individual is familiar with various controlled
substances, to include cocaine, and he/she knows how cocaine looks and
smells, and how it is packaged, sold and used. The credible individual has
demonstrated his/her knowledge to me in conversation and this knowledge is
consistent with my own experience and knowledge regarding this type of
controlled substance. (3)

 The credible individual stated that he/she had observed Gilbert Duarte
08-17-87 in possession of cocaine within the past twenty-four hours at 10919
Indigo Creek. I conducted computer research on the premises where I was able
to confirm that Gilbert Duarte 08-17-87 does indeed reside at 10919 Indigo
Creek. Gilbert Duarte 08-17-87 has given that address as his residence on a
traffic ticket that he received on 05-03-08.

 Based on the information, affiant asks that a warrant be issued to search the
above-described premises for to wit: cocaine, which is unlawfully possessed
by the aforesaid Gilbert Duarte 08-17-87 at the above-described premises.
And to arrest the above described person and any other parties found on said
premises or making their escape therefrom, where said parties are found to be
in possession of the above described controlled substance or any other
controlled substance in violation of the Texas Health and Safety Code.

 At the motion-to-suppress hearing, appellee contrasted the affidavit in this case to that
held sufficient in Pardo v. State. Pardo also involved a first-time informant and set out
precisely the same boilerplate language concerning the informant as in this case. But, as
appellee pointed out, the affidavit in Pardo had the following additional information:

 The credible individual also positively identified the listed location. The
credible individual positively identified the named individual from a mug shot
from the SAPD database. The credible individual also describe[d] the vehicle
the named individual uses to sell his narcotics, (brown Ford Expedition).
Pardo, Victor has the listed address in the SAPD master name file. Pardo,
Victor is currently on probation for possession c/s w/int deliver 4-200 g.
Surveillance was conducted at the listed location and numerous vehicles were
seen arriving at the location and then leaving a short time later, this being
consistent with drug transactions. (4) 

In her factual findings, the trial judge referred to Pardo and the boilerplate language
concerning the first-time informant in both affidavits, but noted,

 The defendant points out, and the court finds, that in this case, unlike in Pardo,
there is no added paragraph in the affidavit setting out surveillance of the
defendant's house, separate identification of the defendant, separate
identification of the car used by the defendant, or information regarding the
defendant currently being on probation for a drug offense.


The trial judge granted Mr. Duarte's motion to suppress. She concluded that the affidavit in
this case did not contain sufficient information to support a finding of probable cause: "The
magistrate in this case was only presented with information the detective obtained from the
informer, and was not presented with other verifying information other than determining that
the defendant gave the address as his residence on a traffic ticket he received in 2008."

 The State appealed, and the court of appeals reversed. Characterizing this as a "close
issue," the court held that, under the "great deference" standard, the magistrate had a
substantial basis for concluding that probable cause existed. (5) The court stated that it was
reasonable for the magistrate to conclude that the informant's credibility was demonstrated
by the statements in the affidavit that the informant would benefit only if the information was
correct, and that false information would jeopardize the informant's ability to have a
favorable plea bargain or the pending charges dismissed. (6) Likewise, the court concluded that
the magistrate could reasonably have found the information reliable based on the affiant's
statement that the informant (1) demonstrated his knowledge about drugs to the officer-affiant, and (2) personally saw the cocaine at the premises within the past twenty-four hours. (7) 
We granted review to examine whether a tip by a confidential informant of unknown
reliability, standing virtually alone, provides a sufficient basis for a magistrate's probable
cause determination. (8)II.

 The core of the Fourth Amendment's warrant clause and its Texas equivalent is that
a magistrate may not issue a search warrant without first finding "probable cause" that a
particular item will be found in a particular location. (9) The test is whether a reasonable
reading by the magistrate would lead to the conclusion that the four corners of the affidavit
provide a "substantial basis" for issuing the warrant. (10) Probable cause exists when, under the
totality of the circumstances, there is a "fair probability" that contraband or evidence of a
crime will be found at the specified location. (11) This is a flexible, nondemanding standard. (12)

Neither federal nor Texas law defines precisely what degree of probability suffices to
establish probable cause, but a magistrate's action cannot be a mere ratification of the bare
conclusions of others. (13) A magistrate should not be a rubber stamp. "In order to ensure that
such an abdication of the magistrate's duty does not occur, courts must continue to
conscientiously review the sufficiency of affidavits on which warrants are issued." (14) 

 In Aguilar v. Texas, (15) the Supreme Court stated that a review "of the constitutionality
of a search warrant should begin with the rule that 'the informed and deliberate
determinations of magistrates empowered to issue warrants . . . are to be preferred over the
hurried action of officers . . . who may happen to make arrests.'" (16) Therefore, even in close
cases we give "great deference" to a magistrate's determination of probable cause to
encourage police officers to use the warrant process rather than make warrantless searches
and later attempt to justify their actions by invoking consent or some other exception to the
warrant requirement. (17)

 After reviewing the supporting affidavit realistically, and with common sense, a
reviewing court must uphold the magistrate's decision so long as the magistrate had a
substantial basis for concluding that probable cause existed. (18) The focus is not on what other
facts could or should have been included in the affidavit; the focus is on the combined logical
force of facts that are in the affidavit. (19) 

III.

 The present affidavit is based almost entirely on hearsay information supplied by a
first-time confidential informant. When the Supreme Court abandoned the two-pronged test
established by Aguilar and Spinelli and reaffirmed the totality-of-the-circumstances analysis
that traditionally informed probable-cause determinations, the Court emphasized that
corroboration still matters:

 Our decisions applying the totality-of-the-circumstances analysis . . . have
consistently recognized the value of corroboration of details of an informant's
tip by independent police work. In Jones v. United States, we held that an
affidavit relying on hearsay "is not to be deemed insufficient on that score, so
long as a substantial basis for crediting the hearsay is presented." (20) 

 The issue in this case is whether the magistrate had a substantial basis for crediting
the informant's hearsay. The court of appeals relied on the affidavit's boilerplate language 
to conclude that the magistrate acted within his discretion in finding the informant credible:
he has pending charges; he is hoping for a dismissal or favorable plea bargain; he knows he
will not benefit unless the information provided is valid; and he knows the criminal
consequences for giving false information. (21) The court also relied on boilerplate language
to demonstrate the "'reliability' of the information (how did the informant know the
substance was cocaine)": In his conversation, the informant demonstrated a knowledge about
drugs that was consistent with affiant's knowledge about drugs. (22) That is, the informant
knows cocaine when he sees it. 

 The State adds that the magistrate could have reasonably inferred that the affiant-officer "interviewed the individual at length" to establish that the individual was truthful and
reliable. (23) And the State points out that the officer verified the address given as appellee's. (24) 
Both the court of appeals and the State fault the trial judge for focusing on facts that the
affidavit did not contain, rather than the facts that it did contain. (25)

 We find that the weight given to the informant's hope for lenient treatment on his own
pending charges in return for his "tip" is inappropriate as that is the very characteristic that
sets the citizen-informer apart from the informant "from the criminal milieu." Professor
LaFave notes that

 courts have quite properly drawn a distinction between such a person [from the
criminal milieu] and the average citizen who by happenstance finds himself in
the position of a victim of or a witness to criminal conduct and thereafter
relates to the police what he knows as a matter of civic duty. One who
qualifies as the latter type of individual, sometimes referred to as a "citizen-informer," is more deserving of a presumption of reliability than the informant
from the criminal milieu. (26) 

The citizen-informer is presumed to speak with the voice of honesty and accuracy. The
criminal snitch who is making a quid pro quo trade does not enjoy any such presumption; 
his motive is entirely self-serving. The Supreme Court stated in Illinois v. Gates,

 if an unquestionably honest citizen comes forward with a report of criminal
activity-which if fabricated would subject him to criminal liability-we have
found rigorous scrutiny of the basis of his knowledge unnecessary. 
Conversely, even if we entertain some doubt as to an informant's motives, his
explicit and detailed description of alleged wrongdoing, along with a statement
that the event was observed first-hand, entitles his tip to greater weight than
might otherwise be the case. (27)

 Federal courts find that probable cause for the issuance of a search warrant exists
"notwithstanding" an actual or potential quid pro quo obtained by a first-time informant in
exchange for the information, not "because" of it. (28) They do so if the tip is corroborated, (29)
is a statement against penal interest, (30) is consistent with information provided by other
informants, (31) is a detailed first-hand observation, (32) or is coupled with an accurate prediction
of the subject's future behavior. (33) They do so when there is a substantial basis for crediting
the hearsay. (34) Texas courts apply the same principles. Citizen informants are considered
inherently reliable; confidential informants are not. (35) 

 Confidential informants-even though culled from the "criminal milieu"-may be
considered reliable tipsters if they have a successful "track record." (36) As Professor LaFave
points out, "Lower courts have with virtual unanimity held that a declaration that the
informant's past information has led to convictions is a sufficient showing of the informer's
credibility." (37) But tips from anonymous or first-time confidential informants of unknown
reliability must be coupled with facts from which an inference may be drawn that the
informant is credible or that his information is reliable. (38)

 We agree with appellee that there was no substantial basis for crediting the first-time
informant's hearsay statement. Officers failed to corroborate the informant's tip except to
confirm appellee's address. (39) The tip was not a statement against interest, (40) nor repeated by
other informants. (41) There was no accurate prediction of future behavior. (42) This tip was a
first-hand observation, but it contained no particular level of detail regarding appellee's
premises or his criminal activity. (43) The tip was: "The credible individual stated that he/she
had observed Gilbert Duarte 08-17-87 in possession of cocaine within the past twenty-four
hours at 10919 Indigo Creek." That is it. (44) How much cocaine did he possess? A couple of
lines worth, laid out at a party and fully consumed? A kilo? Where did Mr. Duarte have the
cocaine? In the pocket of his jeans? Hidden in the attic? Was it piled on the kitchen table
being weighed and packaged for sale? This is not a case where there is a tip about a
methamphetamine lab, or marijuana-growing operation, or crack-cocaine dealing. In those
cases, the tip supports an inference that the criminal activity is ongoing. (45) Here, as the State
acknowledged at oral argument, there is nothing in the affidavit that suggests Mr. Duarte was
engaged in drug-dealing. Indeed, one could plausibly conclude from this affidavit that it was
the confidential informer who delivered the cocaine to Mr. Duarte's house. All we know is
that the informant saw some amount of cocaine "in the possession" of Mr. Duarte.

 On the one hand, the informant gave a timely, first-hand tip. On the other hand, the
police failed to corroborate the tip except to confirm Mr. Duarte's address. But the fact that
Mr. Duarte lives where the informant says he lives does not make his assertion that Mr.
Duarte possessed cocaine more reliable. Further, the tip was vague, not an "explicit and
detailed description of alleged wrongdoing" that the Gates court referenced. There were no
facts from which to draw an inference that the referenced "credible individual" actually was
a "credible individual." The affiant's ipse dixit does not make it so. (46) Under the
totality-of-the-circumstances analysis-balancing the relative weights of all the various indicia
of reliability (and unreliability) attending the informant's tip-the magistrate here did not have
a substantial basis upon which to find probable cause. 

 We agree with the State that "an affiant's basis for finding the informant reliable need
not be of any certain nature." (47) But, whatever its nature, it must be demonstrated within the
four corners of the affidavit. Here, the affiant-officer believed that the confidential informant
was credible largely because he was a "confidential informant"-a "snitch" with pending
criminal charges who wanted to trade a tip for leniency. We decline to equate the reliability
of a first-time, unnamed informant with that of a named citizen-informant. 

 The trial judge correctly identified the problem with this boilerplate affidavit: it
contained insufficient particularized facts about appellee's alleged possession to allow the
magistrate to determine probable cause to issue a search warrant. The trial judge did not err
in granting Mr. Duarte's motion to suppress. The judgment of the court of appeals is
reversed, and the case is remanded to the trial court for proceedings consistent with this
opinion.

Delivered: September 12, 2012

Publish
1. State v. Duarte, No. 04-11-00040-CR, 2011 WL 3849461, *3 (Tex. App.--San
Antonio Aug. 31, 2011) (not designated for publication).
2. We use this term because the court of appeals used it and because it is a good shorthand
for referring to an informant of unknown and untested reliability.
3. The emphasized language is the exact same language, word-for-word, as that used by a
different officer-affiant in Pardo v. State, Nos. 04-08-00628-CR, 04-08-00629-CR, 2009 WL
1706760 (Tex. App.--San Antonio June 17, 2009, pet. ref'd) (not designated for publication), to
describe the first-time informant in that case.
4. Id. at *2.
5. Duarte, 2011 WL 3849461, at *3.
6. Id. Of course, that would be true of any first-time informer who provides information
with the expectation of leniency in his pending criminal charges. The court noted that precisely
the same verbiage was used in the Pardo affidavit, but did not otherwise comment on the use of
these boilerplate paragraphs applicable to all first-time informants who have pending charges
against them.
7. Id.
8. We granted review of appellee's sole ground for review:

 The analysis performed by the Fourth Court was erroneous in its application of the
law to the facts to such a degree that the Fourth Court essentially provided no
appellate review. The opinion glossed over the problems with the magistrate's
finding of probable cause, notwithstanding that the supporting affidavit was
minimal at best, failing to put in the most basic information, without which a
magistrate cannot possibly make a valid and credible determination of probable
cause for a search warrant.
9. Rodriguez v. State, 232 S.W.3d 55, 60 (Tex. Crim. App. 2007); U.S. Const. amend IV;
Tex. Const. art. I, § 9.
10. Massachusetts v. Upton, 466 U.S. 727, 733 (1984); Rodriguez, 232 S.W.3d at 60.
11. Illinois v. Gates, 462 U.S. 213, 238 (1983); State v. McLain, 337 S.W.3d 268, 272
(Tex. Crim. App. 2011).
12. McLain, 337 S.W.3d at 272.
13. Gates, 462 U.S. at 239; Rodriguez, 232 S.W.3d at 61.
14. Gates, 462 U.S. at 239.
15. 378 U.S. 108 (1964).
16. Aguilar, 378 U.S. at 110-11 (quoting United States v. Lefkowitz, 285 U.S. 452, 464
(1932)).
17. Ornelas v. United States, 517 U.S. 690, 699 (1996); Gates, 462 U.S. at 236.
18. Gates, 462 U.S. at 236, 241; Jones v. State, 364 S.W.3d 854, 857 (Tex. Crim. App.
2012).
19. Rodriguez, 232 S.W.3d at 62.
20. Gates, 462 U.S. at 241-42 (quoting Jones v. United States, 362 U.S. 257, 269 (1960)).
21. Duarte, 2011 WL 3849461, at *3.
22. Id.
23. State's Response Brief at 8.
24. Id.
25. Duarte, 2011 WL 3849461, at *3 ("Duarte argues that such corroboration of the
informant's information is lacking here, as the affiant merely confirmed that Duarte lived at the
address indicated by the informant. The trial court apparently agreed with Duarte, because it
found significant the affiant's failure to corroborate the informant's information in any other
manner. However, the proper standard of review is not to determine whether all the information
that could have been put into an affidavit was actually in the affidavit. Rather, the reviewing
court defers to the magistrate's determination, allows all reasonable and commonsense
inferences, and decides whether the magistrate's conclusion is supported by the assertions in the
affidavit."); State's Response Brief at 10 ("[T]he issue is not whether there are other factors that
could have, or even should have, been included in the affidavit or complaint, but rather, whether
the combined logical force of facts that are in that specific affidavit, not those that are omitted,
are sufficient coupled with inferences from those facts, to establish a 'fair probability' that
evidence of a particular crime will likely be found").
26. 2 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth
Amendment § 3.3 at 98 (4th ed. 2004) (footnote omitted).
27. Gates, 462 U.S. at 233-34 (citations omitted).
28. See Brian Sheppard, Annotation, Sufficiency of Information Provided by Confidential
Informant, Whose Identity Is Known to Police, to Provide Probable Cause for Federal Search
Warrant Where There Was No Indication that Informant Provided Reliable Information to Police
in Past--Cases Decided After Illinois v. Gates, 9 A.L.R.Fed. 2d 1 § 20-21 (2006).
29. See United States v. Clyburn, 24 F.3d 613, 618 (4th Cir. 1994) ("Although the
informant's reliability initially was questionable due to her incarceration, Sergeant Dennis
verified the informant's allegations by setting up and monitoring controlled purchases of
cocaine.").
30. See United States v. Buchanan, 574 F.3d 554, 562 (8th Cir. 2009) (CI provided
information contrary to her own penal interest-the "indicia of reliability"); United States v.
Buckley, 4 F.3d 552, 554, 556-57 (7th Cir. 1993) (informant-who wanted to curry favor with the
officer who pulled her over for a traffic violation and discovered cocaine-spoke against her penal
interest when admitting that she had purchased cocaine from the defendants at least 25 times in
the previous six months).
31. See United States v. Canfield, 212 F.3d 713, 720-21 (2d Cir. 2000) ("sufficient
corroboration existed. CI-1's statements regarding Canfield's movements and drug activity were
corroborated by Detective Thorpe and CI-2.").
32. See United States v. Stewart, 337 F.3d 103, 106 (1st Cir. 2003) ("[P]robable cause in
the first warrant application, even taking into consideration the omissions [about the informants'
criminal charges], could hardly have been stronger. Three days before the search warrant was
executed, during a controlled purchase by Creamer that was recorded by agents, appellant
asserted that he expected to have 'plenty' of additional cocaine the following Monday, the day of
the search. Certainly in the context of the ongoing investigation, which included three previous
controlled buys, that statement provided compelling evidence that appellant would be found in
possession of cocaine on June 18.").
33. See United States v. Wilson, 964 F.2d 807, 810 (8th Cir. 1992) (probable cause to
search established when police surveillance corroborated almost all aspects of the informant's
prediction; "The informant told agents where he and Wilson would be that evening, described the
container in which the drugs were stored, and described the car in which the drugs were
transported."). 
34. United States v. McKeever, 5 F.3d 863, 865 (5th Cir. 1993) (CI's tip that defendant had
purchased the property and built a structure in which he intended to cultivate marijuana could be
credited where CI further stated that he has purchased marijuana from defendant on several
occasions [and so made a statement against interest], and agent corroborated the purchase of the
property and the building of the hydroponic marijuana-growing facility).
35. Johnson v. State, 803 S.W.2d 272, 289 (Tex. Crim. App. 1990) ("In the instant case,
the affidavit in support of the search warrant was based on information supplied by police
officers and citizens. None of the information was obtained from confidential informants. Thus,
the magistrate was entitled to rely on the credibility of the affiant and his sources and the
reliability of the information supplied in the affidavit."), overruled on other grounds by Heitman
v. State, 815 S.W.2d 681, 690 (Tex. Crim. App. 1991); Marquez v. State, 725 S.W.2d 217, 232
(Tex. Crim. App. 1987) ("Appellee alleges that the affidavit must contain some facts to show that
the peace officers and other witnesses who provided affiant with the substantive information
contained in the affidavit are credible. This argument is entirely without merit. While it is true
that such facts must be included when the information contained in the affidavit is given by a
confidential informant, as a matter of constitutional law an ordinary citizen as a witness in a case
or a police officer is presumed to be reliable and no special showings are required."), overruled
on other grounds by Moody v. State, 827 S.W.2d 875, 892 (Tex. Crim. App. 1992); West v. State,
720 S.W.2d 511, 513 n.2 (Tex. Crim. App. 1986) ("We decline the invitation to view with the
same suspicion usually reserved for anonymous police informants with an unproven record of
reliability information given by citizens who report a crime then freely share what information
they have with police without withholding their own names."); see also State v. Wester, 109
S.W.3d 824, 826-27 (Tex. App.--Dallas 2003, no pet.) (distinguishing a statement from a
named informant under arrest on suspicion of drug offense from an "inherently reliable"
statement of average citizen reporting a crime to police); Morris v. State, 62 S.W.3d 817, 824
(Tex. App.--Waco 2001, no pet.) ("A magistrate is entitled to rely on information supplied by a
private citizen, since, unlike many police informants, they are much less likely to produce false
or untrustworthy information."); Winters v. State, 897 S.W.2d 938, 941-42 (Tex.
App.-Beaumont 1995, no pet.) ("In the instant case, the informant is not a 'snitch.' He is an
average citizen who reported a crime. In that particular situation, Texas courts have given a
certain deference to the named, private citizen informant. Where a named informant is a private
citizen, whose only contact with the police is a result of having witnessed a criminal act
committed by another, the credibility and reliability of the information are inherent.").
36. Dixon v. State, 206 S.W.3d 613, 616-17 (Tex. Crim. App. 2006) ("[T]he evidence
established that the confidential informant was credible and reliable. Agent Gray had known the
informant for over a year. The information that he had provided in the past had always been
shown to be true and had led to the arrest of at least five drug offenders. Thus, by Agent Gray's
testimony, the informant was batting one thousand, at least with respect to five prior occasions.
This is an important factor in establishing the credibility of the informant as it may be inferred
that the police would not repeatedly act on information from one who has not proven by
experience to be reliable.") (footnotes omitted); Brown v. State, 243 S.W.3d 141, 146 (Tex.
App.--Eastland 2007, pet. ref'd) (evidence that the informant had previously provided reliable
information was sufficient to establish his veracity; "magistrate knew that the informant's
veracity or reliability was based upon: having provided information that led to the arrest of at
least five drug offenders; being lawfully employed; providing the information voluntarily and
without any promise or deal; and having always provided true and correct information.").
37. 2 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth
Amendment § 3.3(b) at 115, 119 n.85 (4th ed. 2004 & 2010-2011 Supp.) (citing Dixon v. State,
206 S.W.3d 613 (Tex. Crim. App. 2006)).
38. See State v. Delagarza, 158 S.W.3d 25, 28 (Tex. App.--Austin 2005, no pet.) (officers
corroborated tip from anonymous informer of unknown reliability by collecting-from trash cans
outside the residence- "corner bags" that field tested positive for cocaine); Barton v. State, 962
S.W.2d 132, 137-38 (Tex. App.--Beaumont 1997, pet. ref'd) ("The informant's 'basis of
knowledge' was more than sufficient to make up for any 'veracity' deficiency. The informant
stated that he/she lived on the premises where the contraband was located, lived with appellant,
and had personally been on the premises in question within the past 24 hours. Furthermore, the
'reliability' of the information provided was proven to a significant degree in that the affiant
himself tested the contents of the package provided to him by the informant, with the results
confirming the fact that the package indeed contained cocaine."); Knight v. State, 814 S.W.2d
545, 548 (Tex. App.-- Houston [1st Dist.] 1991, no pet.) ("[I]nformant's basis of information
contained in his tip, combined with the independent corroboration, especially of appellant's prior
criminal record and his prior methamphetamine sales from the same location, were enough to
overcome the fact that the anonymous informant's veracity was unknown. This gave the
magistrate a substantial basis to believe that methamphetamine was then located at appellee's
apartment.").
39. Compare Flores v. State, 319 S.W.3d 697, 703 (Tex. Crim. App. 2010) (magistrate
could reasonably conclude that the informer's tip regarding illegal drugs at the Ramona Circle
residence, although perhaps insufficient in itself to establish probable cause to search, was
reliable where affiant twice found marijuana stems, seeds, and residue in a garbage can located
on the street in front of the Ramona Circle residence) and State v. Griggs 352 S.W.3d 297, 304
(Tex. App.--Houston [14th Dist.] 2011, pet. ref'd) ("Alone, the tip that cocaine was being
'stored and sold' at the residence is no more than a bare assertion, but the tip combined with the
subsequent controlled buy provides facts from which a magistrate could reasonably infer that the
sale of cocaine was an ongoing enterprise rather than an isolated incident.") with Parish v. State,
939 S.W.2d 201, 204 (Tex. App.--Austin 1997, no pet.) ("We do not think these scant facts
[corroborating that defendant's motel room and car were properly identified by the informant]
supplied a basis for the tip's reliability. They were ascertainable by anyone who Parish may have
been in contact with; for example, he may have related them to the motel clerk when he
registered for the room."). The Supreme Court has noted that corroboration of "innocent
activity" may be sufficient to support a finding of probable cause, if the "seemingly innocent
activity became suspicious in the light of the initial tip." See Gates, 462 U.S. at 244-45 & n.3,
quoting Jones v. United States, 362 U.S. 257, 269-70 (1960).
40. Cf. Mejia v. State, 761 S.W.2d 35, 38 (Tex. App.--Houston [14th Dist.] 1988, pet.
ref'd) (named informant's credibility was reinforced when he admitted to being a drug trafficker;
"An admission against penal interest, even by a first-time informant, is a factor indicating
reliability.").
41. Cf. Jones v. State, 364 S.W.3d 854 (Tex. Crim. App. 2012) (affidavit established
probable cause when officer stated that he had "recently" received information from first
confidential informant, and after receiving information, used second CI to make controlled buy).
42. Cf. Angulo v. State, 727 S.W.2d 276, 279-80 (Tex. Crim. App. 1987) (finding probable
cause for warrantless automobile search under Gates, where the defendant's seemingly
innocuous behavior became "suspicious in light of the anonymous tip," especially in light of the
prior surveillance of defendant's apartment.).
43. Cf. Long v. State, 137 S.W.3d 726 (Tex. App.--Waco 2004, pet. ref'd). The affidavit
in that case stated, in part:


 Affiant and Detective Tanner have received information on several occasions
within the past two months that Carl Long has manufactured as well as possessed
methamphetamine speed at his residence in the Brushie Prairie Community.
Detective Tanner has received information from a confidential informant
hereinafter referred to as (CI) that Carl Long keeps the equipment to manufacture
methamphetamine speed at his residence in a hole in the ground next to the house.
The CI said that when Long gets ready to manufacture, he removes the lab
equipment from the hole outside the house, takes it into the house and cooks the
speed. The CI advised that Carl Long is using the Nazi Lab method to
manufacture methamphetamine speed. . . . The CI advised Detective Tanner that
Long manufactures the speed in the southwest corner of the house which is a
bedroom. The CI advised Detective Tanner that Long always has all of the
necessary equipment and is able to obtain the necessary chemicals to manufacture
Nazi speed.

 On April 8th, 1999, Detective Tanner received information from a confidential
informant hereinafter referred to as (CI) that he or she had been by the suspected
premises within the last 48 hrs and he or she had observed methamphetamine
(speed) being manufactured at the suspected premises by Carl Long and others.


Id. at 730-31. The tip was also corroborated by the detectives' drive-by of the residence where
they "smelled a odor of ether around the southwest corner of the residence." Id. at 731.
44. That may be enough if the informant has a track record and is known to be reliable. 
We have held as much. In Hegdal v. State, 488 S.W.2d 782 (Tex. Crim. App. 1972), probable
cause was based solely on affiant's receipt of information from a confidential informant that the
informant had personally observed methamphetamine "at the above described location within 48
hours of the date of the making of this Affidavit." Id. at 784. We held that the tip supported the
magistrate's finding of probable cause. But the tip was not from a first-time informant. Rather,
included in the four-corners of the affidavit was the averment: "Affiant has received information
from said reliable and credible informant on previous occasions and such information has proven
to be true and correct." Id.
45. Jones v. State, 364 S.W.3d at 859-62 (confidential informant's tip that crack cocaine
was being sold out of defendant's residence-corroborated by a controlled buy and previous
information from at least two informants that drugs were being sold from the address-"was
sufficient to establish probable cause that a continuing drug business was being operated from
the residence, a secure operational base"); Davis v. State, 202 S.W.3d 149, 156 (Tex. Crim. App.
2006) (informant's tip-considered with crimestopper's tip and affiant officer's statement that on
the day the affidavit was prepared, an officer drove past the residence and smelled a strong
chemical odor that he has associated with the manufacture of methamphetamine-supported
magistrate's decision to issue warrant).
46. Elardo v. State, 163 S.W.3d 760, 766 (Tex.App.--Texarkana 2005, pet. ref'd) ("The
warrant in this case provides no facts on which the magistrate could conclude that the 'reliable
source' is reliable, nor does the warrant contain any corroboration of the informant's information
or other indicia of reliability. The warrant only contains the conclusory and bare-bones assertion
that the source is reliable."). We agree with appellee that affiant's vouching statement-"The
credible individual's statement to me that the information is true enhances the probability that the
information is correct"-does nothing to establish the reliability of the informant. Appellee's
Petition at 11. Merely because the Cretan Liar says, "My information is true," does not increase
the probability that his information is correct.
47. State's Response Brief at 9.